# THE SUPREME COURT

OF

## PENNSYLVANIA.

65   9
149  397

65   9
f227  5609

## Russell *versus* The First Presbyterian Church of Pottsville.

1. A church sued their treasurer for funds in his hands; he pleaded specially that they belonged to another church. After the case was on for trial, the Second Church asked to be permitted to interplead in the suit. *Held,* that the application was properly refused.

2. The defendant by suggestion that the claimant was in privity with the plaintiff, and that he was willing to pay the money to whom it might be found due, and praying for substitution, might bring in the claimant by rule or scire facias, or the claimant would be permitted to appear and plead *gratis.*

3. The plea not containing allegations of privity and willingness to pay, was defective.

4. The defendant was treasurer of both churches, which were in negotiation for uniting, and he had given a receipt as treasurer of the first. *Held,* that he might show that he had given the receipt in mistake, that the union would be completed, and that the money belonged to the Second Church.

5. A receipt is open to contradiction, explanation or correction, and may be shown to have been given under a mistake either of fact or law.

6. The treasurer of a corporation cannot set off his own debt, when sued for money in his hands.

7. Without an order from the corporation he cannot pay the funds in his hands or appropriate them to himself.

January 20th 1870. Before Thompson, C. J., Read, Sharswood and Williams, JJ. Agnew, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county:* Of July Term 1869, No. 17.

This was an action of assumpsit, brought to December Term

[Russell *v.* Church.]

1868, by The First Presbyterian Church and Congregation of Pottsville against Thomas M. Russell, to recover money which it was alleged the plaintiff had received as treasurer of the plaintiffs, and which he declined to pay over.

The defendant pleaded the general issue, and also a special plea, in which he averred that the money claimed in the suit " came into his hands at the time he was acting in the double capacity of treasurer for said plaintiff, and also as treasurer for the Second Presbyterian Church of the borough of Pottsville. That the said money belonged to the said the Second Presbyterian Church, and not to said plaintiff, and that this defendant has been notified and required to pay over said money to said last-mentioned corporation, and a bill in equity filed in this court to compel him to do so, and he believes it is his legal and moral duty to do so."

The cause was tried, April 13th 1869, at a special court, before Elwell, P. J., of the 26th District.

At the trial, the Second Presbyterian Church of Pottsville presented a petition entitled of this suit, setting forth "that the fund demanded by the plaintiff in this case arises from the sale of the property of the Second Presbyterian Church of Pottsville. That said defendant received said funds while he was the treasurer of said Second Presbyterian Church, that in law and in equity the funds belong to the Second Presbyterian Church, and therefore pray this court to be permitted forthwith to interplead with said plaintiff to try the title or right of defendant to said funds in the hands of Thomas M. Russell, and claimed by your petitioners," &c.

The court refused the petition, and sealed a bill of exceptions.

The plaintiff gave in evidence the following receipts :—

" Received, Pottsville, October 18th 1867, per Solomon Foster, one thousand dollars of the treasurer of the borough council, it being the first payment for the Second Church property.
                                        " T. M. RUSSELL,
                                          " Treasurer of 1st P. C."

" Received, Pottsville, February 5th 1868, of S. Foster, one thousand dollars in money, and three bonds of the borough of Pottsville, for two thousand dollars each, being the balance of purchase-money, &c., he received for the sale of the Second Presbyterian Church, corner of Market and William streets.
                                        " T. M. RUSSELL."

The plaintiffs gave in evidence the election of the defendant as their treasurer, October 7th 1867; his election as trustee, April 6th 1868; his resignation as treasurer and trustee at a meeting of the trustees at which he was present; his report of same date

[Russell *v.* Church.]

of receipts and expenditures as treasurer of the plaintiffs, from October 1st 1866 to April 6th 1868, to which was appended the following memorandum :—

"I hold in my hands on the sale of the Second Church property $2000,—less $750 retained for the church, to return to the Church Extension Board, &c.    $1250

Three borough bonds of $2000 each, payable in one, two and three years, to be invested when our church matters are amicably arranged and settled    .    .    .    6000

$7250"

It was admitted that before the commencement of this suit, the funds in his hands had been demanded from the defendant. After other testimony, merely formal, the plaintiffs rested.

The defendant gave evidence that donations to churches from the church extension committee of the Presbyterian Church (Old School), are made on the condition that when a church which has been aided, changes its church connection, the money given is to be refunded. He gave evidence also that the Second Church had received from the church extension committee a donation of $750; also that at a meeting of the trustees of the First Church the defendant, in presenting his account, said that he was morally bound to refund the $750, which was acquiesced in without any formal resolution.

The defendant offered the charter of Second Presbyterian Church of Pottsville, granted 7th June 1859, to show that there was a church organization and corporation of that name, and to show the nature of such corporation. To be followed by evidence,

"1. That Thomas M. Russell was the treasurer of said Second Presbyterian Church at the date of the receipts given in evidence by plaintiff and for years prior thereto and ever since.

"2. That the moneys for which said receipts were given were the proceeds of the sale of the church edifice of the Second Presbyterian Church, made by such church, and belonged to said church, and not to the plaintiff.

"3. That at the time of the receipt of such moneys there was contemplated a consolidation and merger of the two corporations, and the signature of Thomas M. Russell to one of the receipts as treasurer of the First Presbyterian Church was given in view of the consummation of such contemplated consolidation and merger, but that such receipt was not authorized by said Second Church, but was given by defendant under the mistake and belief that the proposed consolidation and merger would take place.

"4. That the First Presbyterian Church failed to comply with and keep the terms that constituted the conditions upon which

[Russell *v.* Church.]

said proposed merger and consolidation was to take place, and that none ever did take place.

" 5. That the funds received by defendant as aforesaid have been demanded of him by said Second Presbyterian Church, and a bill in equity filed in this court requiring him to account to said church for the same.

" This is offered to show that the funds for which this suit is brought, never belonged to the plaintiff, and that the defendant is bound in law to account for the same to the said Second Presbyterian Church."

The offer was rejected and a bill of exceptions sealed.

He further offered to prove that there existed in Pottsville a separate church organization, known as the Second Presbyterian Church of Pottsville. " That the First Presbyterian Church claimed that the Second Church became merged into and consolidated with it, and that all the members thereof, and the property of said Second Church, were merged into and consolidated with said First Church.

" That the First Church has in pursuance of such claim taken all the personal chattels of said Second Church and appropriated the same to its own use. That the said First Presbyterian Church claims the funds in suit on the ground that all the real estate, including the church edifice of said Second Presbyterian Church, became the property of said First Church, by virtue of said alleged merger and consolidation. That said fund is part of the proceeds of sale of said church edifice. That said Second Church has no assets or means for the payment of its debts, except the property claimed and appropriated by said First Church as aforesaid.

" That said Second Church is indebted to said Thomas M. Russell in the sum of  .    .    .    .    .    .    . $509.50
And also the further sum of  .    .    .    .    . 310.55
Making a total of  .    .    .    .    .    .    . $820.05"

The offer was rejected and a bill of exceptions sealed.

The plaintiffs in rebuttal gave evidence for the purpose of showing that the board of trustees had assumed the repayment of the $750 to the church extension committee, but did not acquiesce in the defendant retaining it.

The court charged :— * * *

" Having obtained possession of the fund in controversy from the plaintiff by accepting the office of treasurer, the defendant is estopped from asserting title thereto, either in himself or a stranger. It would be contrary to the terms of his contract, to sound policy and good faith, to allow the treasurer of a corporation of his own motion, to acknowledge adverse claims to funds in his hands, and thereby compel his principal, whose interest he ought by all means in his power to protect, to establish its title.

[Russell v. Church.]

"He was not appointed to distribute the assets of the church, but to receive both on trust and pay out upon orders drawn by the proper officers, and at the expiration of his office to hand over to his successor.

"It appears by the testimony of W. R. Smith and others, that the board of trustees informally assented that the defendant might retain the sum of $750, out of the moneys received by him, and pay the same into the church extension fund, thereby acknowledging that the original donor of that sum, to the Second Presbyterian Church of Pottsville, was morally if not legally entitled thereto.

"If the defendant had paid over this sum before revocation of the authority thus given, such payment would have been to that extent a defence.   But it is admitted that before the institution of this suit the plaintiff demanded, by its attorney, the funds in the hands of the defendant, and there being no evidence of payment at any time of said sum, the plaintiff is entitled to recover the same in this action.

"The right of the plaintiff to recover depending upon the written documents in evidence, and the facts shown by the defendant failing to establish a defence, we instruct you, that the plaintiff is entitled to recover the sum of $2000, less the sum of $443.91 paid out by defendant, with interest from the commencement of this suit."

The jury found a verdict for the plaintiffs for $1597.84.

The defendant took a writ of error, and assigned for error,

1. The refusal to grant the petition of the Second Church to be permitted to interplead.

2 and 3. The rejection of his offers of evidence.

*G. R. Kaercher* and *F. W. Hughes*, for plaintiff in error.— The defendant, when he gave the receipts, was treasurer of both churches, the president of the trustees who paid the money knew that it came from the property of the Second Church, and therefore he was dealing illegally with the defendant in taking his receipt as for the First Church: Story on Agency, § 235; Adams' Equity 189.   As to the interpleader: Brightly's Eq. Jur., §§ 13, 18; Eddy *v.* Smith, 13 Wend. 490; Moses *v.* Macferlan, 2 Burrows 1010; 2 Comyn on Contr. 1.   As to the 3d assignment: 2 Redfield on Railways 659, 660.

*S. Foster, Jr.*, and *J. W. Ryon*, for defendants in error.—The defendant received the money as agent of the plaintiffs, and is estopped from denying their right: Story on Agency, § 217; Hill *v.* Frazier, 10 .Harris 320; Turnpike *v.* Watson, 1 Rawle 330; Galbraith *v.* Elder, 8 Watts 81; Fowler *v.* Pittsburgh, F. Wayne and Chicago Railroad Co., 11 Casey 22; Millingar *v.* Hartupee,

[Russell *v.* Church.]

3 P. F. Smith 362. The defendant could not set off a debt due to him by the Second Church against a debt due by him to the First Church: besides, he held the fund for a specific purpose: Cox *v.* Prentiss, 3 M. & S. 344; Jarvis *v.* Rogers, 15 Mass. 397; Parkist *v.* Alexander, 1 J. C. R. 397; Turnpike *v.* Watson, 1 Rawle 330; Bank of U. States *v.* Macalester, 9 Barr 475; Bank of N. Liberties *v.* Jones, 6 Wright 536.

The opinion of the court was delivered, January 31st 1870, by SHARSWOOD, J.—The 1st assignment of error is, that the court refused to allow the Second Presbyterian Church of Pottsville to become a party defendant to the action. They applied by petition to that effect on the day of the trial. But it would have been contrary to all our practice on the subject of interpleading to have permitted it. Though admitted as a party to the record, they would not thereby have been made parties to the issue, nor could the jury have been sworn as to them. The only personal action in which the right of interpleader existed at common law was detinue: 3 Reeves 449. It was applied to a few other cases, such as *quare impedit*, and writs of right of ward: 2 Story's Eq. Juris. 804. The defendant in detinue could plead that the chattel for which suit was brought was held by him as bailee or depositary; that it was claimed by a third person in privity with the plaintiff, and that he was willing to deliver it to the party who was legally entitled to it. Thereupon a process of garnishment issued to compel such third person to appear and defend, or else disclaim his title. This practice has been adopted by the courts of this state, and extended to other forms of action. The want of a court of chancery rendered this necessary to prevent a failure of justice. For although a defendant might protect himself by giving notice of the suit to the claimant, and calling upon him to appear and take defence in his name, yet the latter not being a party to the record, would not be concluded by the judgment without proof of the notice. If that proof should fail the defendant would be remediless, and thus might be subjected to two judgments against him for the same cause of action by two different plaintiffs. Hence the practice was early introduced of compelling such third person to become a party by rule or scire facias founded on a suggestion of the defendants, and no doubt he would be admitted to appear and plead *gratis* without order or process on such suggestion: Coates *v.* Roberts, 4 Rawle 109; Wallace *v.* Clingen, 9 Barr 44; Tritt *v.* Crotzer, 1 Harris 458; McMann *v.* Caruthers, 2 Am. L. Jour. 133. It is the defendant, however, who is to be protected. He must, in due time, make the suggestion, show that the claimant is in privity with the plaintiff, state his willingness to pay the money to the one found entitled to recover it, and pray for the substitution. Taking the

[Russell v. Church.]

special plea filed in this case to have been intended as a suggestion, it was defective in all these respects. In fact, as it afterwards appeared, the defendant had a defence personal to himself, which he attempted to set up to the claim of the Second Presbyterian Church. There was no error, therefore, certainly not at that stage of the proceedings, in refusing to allow the Second Presbyterian Church to intervene and become a party to the suit.

The 2d error assigned is in the rejection of an offer made by the defendant. The evidence produced on the part of the plaintiffs showed that the defendant had been elected their treasurer October 7th 1867, followed by a receipt signed by him as such treasurer, acknowledging to have received from the borough of Pottsville $1000, it being the first payment for the Second Church property, and another receipt of a subsequent date, signed by defendant, but not as treasurer, for a further sum of $1000, and three bonds of the borough of Pottsville for $2000 each, being the balance of the purchase-money received for the sale of the Second Church property. This certainly made out a primâ facie case for the plaintiffs. The defendant then offered the charter of the Second Church, to be followed by evidence that he was the treasurer of the Second Church at the date of the receipts, that the money for which the said receipts were given belonged to said church, that he had signed the said receipt first named as treasurer of the First Church under the mistake that a merger of the two churches was about to take place, but that such merger never was consummated, and the Second Church held him answerable to them for the money. This offer was rejected. In this we think there was error. Admitting that the signature to the first receipt was evidence, not only that the first but the second payment was made to the defendant, and received by him as treasurer of the First Church, it was primâ facie only, certainly not conclusive. There was nothing to work an estoppel in favor of the First Church. They had done nothing on the faith of it. It did not preclude the defendant from showing that in truth he received the money as the treasurer of the Second Church, and that he signed the receipt as treasurer of the plaintiffs under a mistake of fact, that he supposed that the Second Church was or would be merged in the First Church. A receipt is like any other parol admission by the party, open to contradiction, explanation or correction. It may be shown that it was given under a mistake, either of fact or law: Thompson v. Faussat, Peters's C. C. R. 172; Moore v. The Commonwealth, 8 Barr 260; Bell v. Bell, 2 Jones 235; Gue v. Kline, 1 Harris 60. It would certainly be very inequitable if, in consequence of such a mistake, the defendant should be compelled to pay the money twice, as the Second Church could not have been prevented by his receipt from recovering the money from him, if the facts stated in his offer were, as we must assume, true. ] The learned judge

[Russell *v.* Church.]

was right in rejecting the evidence contained in the 3d assignment of error. The treasurer of a corporation cannot set off a debt or independent claim when sued for the money in his hands. He received the funds to hold at the order of the corporation as their officer, and without such order he cannot pay or appropriate them either to himself or others. There is fairly to be implied, from the relation he sustains, an undertaking not to plead a set-off, but to account and pay over whatever money came to his hands in that character : Middletown and Harrisburg Turnpike Co. *v.* Watson, 1 Rawle 330 ; Henniss *v.* Page, 3 Whart. 275 ; Bank of the United States *v.* Macalester, 9 Barr 475 ; Reed *v.* Penrose's Ex'rs., 12 Casey 214.

Judgment reversed, and *venire de novo* awarded.