Fisher *v.* Stevens Coal Company (et al., Appellant).

Argued March 15, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John L. Pipa,* with him *Roger J. Dever,* for appellant.

*Charles C. Lark,* for appellee.

*H. F. Bonno,* for appellee.

Opinion by Keller, P. J., July 13, 1939:

This is an appeal by District No. 9, United Mine Workers of America, an unincorporated association, hereinafter called U. M. W. A., from an order of the Court of Common Pleas of Northumberland County, entered on the petition of Stevens Coal Company, directing the said petitioner to pay into court the sum of one dollar, and ordering appellant and Isaac Fisher to interplead and try the issue whether said one dollar so paid into court is the money of Isaac Fisher or of District No. 9, U. M. W. A.

Ordinarily, where a defendant, who has been sued in an action of assumpsit, comes into court and shows that it is a mere stakeholder, having in its hands a fund, to which it asserts no interest, but which is claimed by another person as well as by the plaintiff in the action, and that it is thus exposed to the trouble and expense of defending two actions and the liability of paying out the fund twice, the court will order the claimants to interplead and permit the petitioning stakeholder to pay the fund into court, and on payment of the same and of the costs to that point, will relieve the stakeholder from further liability to either of the claimants; and from such an order an appeal usually will not lie, for, in such circumstances, it is interlocutory and the rights of the contending claimants are simply transferred from the stakeholder to the fund in court, and are not otherwise affected.

But where the petition for interpleader shows on its face that the petitioner is not a mere stakeholder, but has an interest in the controversy, or has taken some action recognizing the claim of one of the parties as valid, as over against the other, or has incurred a personal liability to either claimant or to both claimants, or has taken any other position that is inconsistent with that of an impartial stakeholder, so that the order of the court directing the money to be paid into court and the claimants to interplead with reference thereto

will affect the substantive right of recovery which either of the parties claimant may have against the petitioner as a debtor growing out of a contractual obligation between them,—or where this fact otherwise clearly appears on the rule granted on the petition—, the order of the court in such event is not interlocutory but is definitive and determinative of substantive rights and is therefore appealable. This case, in our opinion, comes within the latter category.

Interpleader is a remedial proceeding devised and exercised by courts of equity to avoid the risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty.

An excellent review of the subject is contained in the opinion of Mr. Justice STONE in *State of Texas v. State of Florida et al.*, 306 U. S. 398 (filed March 13, 1939) from which we quote, in part, the following, leaving out the citations, which may be referred to in the opinion: "Since, without the interposition of equity, each claimant in pursuing his remedy in an independent suit might succeed and thus subject the debtor or the fund pursued to multiple liability, equity gave a remedy by way of bill of interpleader, upon the prosecution of which it required the rival claimants to litigate in a single suit their ownership of the asserted claim. A plaintiff [that is, the complainant in the bill in equity] need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial ...... The peculiarity of the strict bill of interpleader was that the plaintiff asserted no interest in the debt or fund, the amount of which he placed at the disposal of the court and asked that the rival claimants be required to settle in the equity suit the ownership of the claim among themselves."

In the early days of this Commonwealth, both as a colony and as a State, no provision was made for separate courts of equity, but with a wisdom far in advance

of the times, our judges administered equitable principles, which the settlers brought with them as a part of our common law, (*McMunn v. Carothers,* 4 Clark 354, 355—LOWRIE, J., 8 Standard Penna. Practice, sec. 2, p. 14), under common law forms, and used a writ of scire facias or motion and rule as a substitute for formal bill and equity process in administering equitable relief.

In this way the equitable remedy of interpleader was early made available in this Commonwealth in common law actions by scire facias or motion and rule. See *Coates v. Roberts,* 4 Rawle 100, 108, 109 (1833); *McMunn v. Carothers,* 4 Clark 354; *Brownfield v. Canon,* 25 Pa. 299, 301. In *McMunn v. Carothers,* supra, Judge LOWRIE, then a judge of the District Court of Allegheny County, afterwards a justice and chief justice of the Supreme Court, said: "The principles of equity being part of our common law, our interpleader is no less expansive in its principles than the equity process." And in *Brownfield v. Canon,* supra (1855), the same judge referred to "The old common law process of interpleader," and said (p. 301): "The principles of interpleading, and the cases in which it may be applied, are best exemplified in the practice in equity; but the form of procedure in a common law case is very simple, and requires but little modification."

In 1836 (Act of March 11, 1836, P. L. 76), the General Assembly in a supplement to the Act establishing the District Court for the City and County of Philadelphia (Act of March 28, 1835, P. L. 88), provided in section 4 that "The defendant in any action which shall be brought in the said court for the recovery of money, or of any goods or chattels, or the value thereof in damages, which shall have come lawfully to his hands or possession, may, at any time after declaration filed and before plea pleaded by a suggestion to be filed of record, disclaim all interest in the subject matter of such action, and offer to bring the same into court, or to pay or dispose thereof as the court shall order, and

if he shall also allege under oath or affirmation, that the right thereto is claimed by, or supposed to belong to some person not party to the action, (naming him or them,) who has sued or is expected to sue for the same, or shall shew some probable matter to the court to believe that such suggestion is true, the said court may, thereupon, order the plaintiff to interplead with such third person, and make such rules and orders in the cause, and issue such process for the purpose of making such third person party to the action, and for carrying such proceeding to interplead into full and complete effect, and may render such judgment or judgments thereon, *as shall be agreeable to the rules and practices of the law in like cases.*" (Italics supplied).

This act was modeled after the English Act of 1 and 2 William IV, c. 58, sec. 1, which extended to the English courts of law the remedy by interpleader that our Pennsylvania courts of common pleas had long enjoyed, but which, except for a proceeding in actions of detinue, *Russell v. Church*, 65 Pa. 9, 15, (SHARSWOOD, J.) was there available only by bill in equity.

The Act of March 11, 1836, supra, was afterwards extended to the courts of common pleas of several other counties, (Berks and Schuylkill), by the Act of March 27, 1848, P. L. 265; but this was probably due to a misconception as to the necessity for such an act for the courts of common pleas. The Act of March 11, 1836, supra, merely conferred on the newly created district court the same right to require two claimants to interplead, as respects their claims against a fund or property in the hands of a third person, who disclaimed all interest in the subject matter in dispute, that, by the common law of the Commonwealth, courts of common pleas had long enjoyed and possessed: *Clarke & Cohen v. Real*, 105 Pa. Superior Ct. 102, 109, 159 A. 454; 15 R. C. L. 221. When, therefore, reference is made in the decisions (e. g., *McKinley, v. Mutual Life Ins. Co.*, 278 Pa. 300, 304, 123 A. 304; *Taylor v. Paul*,

6 Pa. Superior Ct. 496, 499; *Pennypacker's Appeal*, 57 Pa. 114, 118; *Orhowski v. Metropolitan Life Ins. Co.*, 125 Pa. Superior Ct. 121, 123, 189 A. 752) to interpleader at or under the common law, the reference is not to the common law of England, but to the common law of Pennsylvania.

The same year, (1836), the General Assembly, by the Act of June 16, 1836, P. L. 784, in section 13, conferred on the Supreme Court "when sitting in banc in the City of Philadelphia and the court of common pleas for the said city and county," the power and jurisdiction of courts of chancery so far as related to, *inter alia.* "IV. The determination of rights to property or money claimed by two or more persons, in the hands or possession of a person claiming no right of property therein." By the Act of February 14, 1857, P. L. 39, the chancery powers and jurisdictions vested in the *court of common pleas or district court* of the City and County of Philadelphia were extended to and conferred on the courts of common pleas of the several counties of the Commonwealth.

Thereafter the several courts of common pleas had the power and jurisdiction to administer equitable relief in interpleader proceedings in proper cases by bill in equity, and still have it; but the simple and convenient method of administering such relief in the common law action by motion and rule has been retained; just as the Pennsylvania rule to open a judgment, which was a substitute for a bill in equity, has, because of its simplicity and convenience, been retained in practice notwithstanding the remedy by formal bill in equity is also available: *Sherwood Bros. Co. v. Kennedy*, 132 Pa. Superior Ct. 154, 200 A. 689.

The general statements made in the opening of this opinion are sustained by the following decisions of the Supreme Court and of this court: In *Bridesburg Mfg. Company's Appeal*, 106 Pa. 275, 276, 277, Judge THAYER of the Court of Common Pleas of Philadelphia County

said in an opinion which was adopted by the Supreme Court (p. 280) : "We think it is well settled, both in England and in this country, that a bill of interpleader cannot be maintained by a plaintiff who has a personal interest in the subject of the controversy. He must show that he is a mere stakeholder, without any rights of his own to be litigated. The object of the proceeding is to determine to which of several claimants the plaintiff shall pay a certain debt or duty, about which there is no dispute except as to the person entitled to receive it, so that when their respective rights are settled nothing further remains in controversy. But that, as Mr. Justice STORY well observes, can never be truly said to be the case where the plaintiff asserts a personal right or claim which remains to be settled between him and the other parties: 2 Com. §807. The plaintiff can only succeed in getting a decree where he disclaims all title or interest in the controversy himself. *If he has a contest of his own with the several claimants he cannot settle it by a resort to this form of procedure* ...... All the text writers agree that the first essential of a bill of interpleader is that the complainant must be a mere naked stakeholder without any interest in the fund, *and without any controversy of his own to be settled in the cause."* (Italics supplied).

In *Bechtel v. Sheafer,* 117 Pa. 555, 560-563, 11 A. 889, the Supreme Court, speaking through Mr. Justice CLARK, said: "It is true, as a general rule, the party seeking relief by an interpleader must not have incurred any independent liability to either of the rival claimants; if he have expressly acknowledged the title or right of one of them, and agreed to hold the property for him, or, disregarding the adverse claim of one, has by contract made himself liable in any event to the other, he cannot be said to stand indifferent between them. Illustrations of this rule are found in the several cases cited by the plaintiff in error. In *Crawshay v. Thornton,* 2 My. & Cr. 1, [Mylne & Craig] the general

nature of the remedy by interpleader is fully discussed. In that case, A, as the agent of B, deposited certain iron with C; D claimed to be the owner of the iron, not only under assignment from A, but by an independent acknowledgment and undertaking of C that he held it at D's disposal; it was therefore held, that owing to the independent obligation of C to hold the iron for D, he had no right to an interpleader between B and D. "The case tendered by every bill of interpleader', says MAULE, J., 'ought to be that the whole of the rights claimed by the defendants may be properly determined by litigation between them; and that the plaintiffs are not under any liabilities to either of the defendants beyond those which arise from the title to the property in contest; because if the plaintiffs have come under any personal obligations, independently of the question of property, so that either of the defendants may recover against them at law without establishing a right to the property, it is obvious that no litigation between the defendants can ascertain their respective rights, as against the plaintiff.' *Horton v. The Earl of Devon*, 4 Exch. 496, [Welsby, Hurlstone & Gordon] is a case precisely similar. The defendants, who were wharfingers, had certain goods deposited at their wharf by A, who transferred them to B; B, by order, transferred them to the plaintiff, at the same time acquainting the defendants with the fact. The defendants thereupon placed the goods to the plaintiff's account on their books, and informed him of their having done so; A and other parties subsequently laid claim to the goods, on the ground that the transfer to the plaintiff was fraudulent. But the right of the plaintiffs, as against the defendants, was supposed to be altogether independent of the question to whom the goods in truth belonged, and it was held, that the defendants were not entitled to an interpleader. So in *Lindsey v. Brown*, 60 E.C.L. 289, [6 Manning, Granger & Scott 291] the personal obligation of Barrow to hold the box of plate

for Lindsey, was independent of the question of the rightful ownership, as between Lindsey and Medley, the claimants; and in *Patorni v. Campbell,* 12 M. & W. [Meeson & Welsby]—276 [277], Campbell had incurred a personal obligation to Patorni, independently of the actual ownership of the bill in dispute, by his agreement to hold it subject to his disposal under his assignment; and in both cases it was held, that the remedy by interpleader did not apply. To the same effect are the cases of *James v. Pritchard,* 7 M. & W. 213, and *Dalton v. Midland Railway Co.,* 74 E. C. L. 457 [12 C. B. (3 J. Scott) 458]; whilst the doctrine of *Slaney v. Sidney,* 14 M. & W. 800, and *Turner v. [Mayor of] Kendal,* 13 M. & W. 171, is simply this: that under the Act of 1 and 2 William IV, an interpleader will not be awarded to relieve a party under an express promise to pay or perform, against an antagonistic and independent claim ...... These general principles, with the exceptions stated, are applicable, whether the proceedings are in the law or the chancery forms; for it is essential, both in law and equity, that the party seeking relief by interpleader shall have no interest in the subject matter."

In *DeZouche v. Garrison,* 140 Pa. 430, 436, 21 A. 450, where an attempt was made by the garnishee in a foreign attachment issued against one Walter G. Garrison, to require Garrison's wife who had recovered judgment against the garnishee in an action of trespass for appropriating her personal goods, to interplead with the plaintiff in the foreign attachment against her husband, as to the ownership of the goods held by the garnishee, the court reaffirmed and reiterated what had been so clearly said by Mr. Justice CLARK, supra, and added thereto: "In the present petition, it is expressly stated that the goods were deposited with the defendant by either Anna A. Garrison or her husband, and as Anna A. Garrison recovered in her adversary action against him, we are bound to assume that she, and

not her husband, was the bailor of the goods. It is also shown in the opinion above referred to 'that under the Act of 1 & 2 William IV, an interpleader will not be awarded to *relieve a party under an express promise to pay or perform, against an antagonistic and independent claim'* ...... Whether the application be regarded as under the common-law practice, or the practice under the act of 1 & 2 William IV., or under our own act of 1836, or under the practice in equity, the result is the same, and the order for an issue was properly refused." (Italics supplied).

In *Schmidt Brewing Co. v. Pittsburgh L. & T. Co.,* 256 Pa. 363, 368, 100 A. 959, where an order discharging a rule for an interpleader was reversed, the Supreme Court said (p. 368) : "In the case at bar, the defendant company is a mere stakeholder, concedes that it owes the money to the party entitled thereto, and disclaims having any interest in the fund for which this action was brought. Defendant has no interest in, or right to, the fund to be adjudicated by litigation. *It does not appear that the defendant has incurred any liability, independent of the fund itself, to either of the claimants which would deprive it of the relief it seeks."* (Italics supplied).

In *McSorley v. Coyle,* 40 Pa. Superior Ct. 560, 564, where an order refusing defendant's motion for interpleader and entering judgment for want of a sufficient affidavit of defense was affirmed, this court, speaking through Judge HENDERSON, said: "Several objections were made by the plaintiff to the granting of an interpleader. Without entering into a discussion of all of them, two were sufficient to support the action of the court. One of these was that the defendants' liability was a direct engagement to pay the amount of the lien at once on failure of the grantors to do so within the time fixed in the contract. This undertaking of the defendants was assumed because the grantors, their principals, desired to relieve the property of the incum-

brance and placed in the hands of the defendants a sufficient sum to discharge the liability. The defendants in becoming parties to the contract undertook to perform if their principals failed and it is admitted that a fund was in the defendants' hands sufficient to carry out this promise. *It is the rule generally speaking relating to interpleaders that the petitioner for such an issue must be free from any independent liability to either of the parties claiming the fund.* If he has expressly acknowledged the title and right of one of them and agreed to hold the property for him he is not an indifferent stakeholder: *Bechtel v. Sheafer,* 117 Pa. 555; *DeZouche v. Garrison,* 140 Pa. 430. The petition for the interpleader admits the contract as set forth in the plaintiff's declaration; it is not disputed that the plaintiff's grantors did not pay within the time stipulated in the agreement and the defendants, therefore, became bound to the plaintiff on the terms of that instrument. The title was accepted by the plaintiff presumably on the consideration in part, at least, of the undertaking of the defendants to satisfy the lien, and their obligation so to do was directly to the plaintiff ...... It [interpleader] is not the form of action to determine the rights of parties on any other question than that of the title to the particular fund. The case presented was, therefore, not an appropriate one for an interpleader." (Italics supplied).

In *Warrington v. Mengel,* 41 Pa. Superior Ct. 362, judgment for want of a sufficient affidavit of defense was affirmed, notwithstanding the pendency of a bill for interpleader, because "the implied obligation of the defendants, arising out of the terms and conditions upon which they held the money, in which they allege they have no personal interest, therefore became operative and they are bound thereby. The assignment of the legal plaintiffs to the defendants for the benefit of the use plaintiff was an appropriation of the fund which, having been in part executed by the defendants

and the conditions of the contract between the legal and equitable plaintiffs having been fully carried out, was such an appropriation of the fund as could not be revoked: *Nesmith v. Drum,* 8 W. & S. 9; *Day & Sharpe's Assigned Estate,* 21 Pa. Superior Ct. 118." See also, *Sargent v. John Hancock Mut. L. I. Co.,* 49 Pa. Superior Ct. 239; *Fidelity Trust Co. v. Wm. Penn Trust Co.,* 110 Pa. Superior Ct. 91, 93, 94, 167 A. 469; *City of Montpelier v. Capital Savings Bank,* 56 A. 89, 90 (Vermont).

The facts in the present case bring it within the exceptions from the allowance of an interpleader referred to in the foregoing cases and negative the petitioning defendant's right to an interpleader issue. They may be stated briefly as follows:

Isaac Fisher brought his action in the Court of Common Pleas of Northumberland County against Stevens Coal Company to recover the sum of one dollar alleged to be due him by the defendant for work and labor as a miner at its Cameron Colliery. He set up a written contract of employment, dated October 8, 1937, by which the defendant agreed to pay him $3.45 per mine car of coal loaded, subject to a corresponding increase or decrease in accordance with changes made during the life of said contract in the rates paid by the Anthracite Industry. He averred that between June 16 and June 30, 1938 he had performed work and labor for which there was due and owing him the sum of $79.72, but that the defendant on July 13, 1938 (the pay day) had paid him only $78.72, having illegally deducted from his said wages the sum of one dollar for "union dues", to recover which the action was brought.

Stevens Coal Company, without filing an affidavit of defense, or making any denial that the plaintiff, Isaac Fisher, had earned the sum of $79.72 as a miner during the last half of the month of June 1938, and that it had paid him only $78.72 thereof, filed a petition for an interpleader setting forth that on May 7, 1936 all of its employees, including the plaintiff, Isaac Fisher, were

members of Local Union 160, District No. 9, U. M. W. A., and that on that date Stevens Coal Company, as a coal operator, entered into a contract with District No. 9 et al. of said U. M. W. A. regulating hours, working time, rates of pay and collection of dues and assessments, which provided, in paragraph or section 6 thereof, as follows:

"(6) Any operator upon receipt of a proper individual assignment from an employee, either direct or through an authorized agent of the United Mine Workers of America, shall deduct dues and assessments from the earnings of such employee, and shall transmit same, not later than the 15th day of each succeeding month, to the District Secretary-Treasurer of the United Mine Workers of America in the District in which the mine is located.

"Dues deducted, as above provided, shall not exceed one dollar ($1.00) per man per month; and assessments authorized and levied by the International Executive Board of the United Mine Workers of America shall not exceed two dollars ($2.00) per man in any calendar year. In the collection of such assessments not more than one dollar ($1.00) shall be deducted in any one month."

which said agreement was then in force and would not expire until April 30, 1939; that on June 26, 1936 the said Isaac Fisher, by written paper signed by him and delivered to Stevens Coal Company, authorized it to deduct from his earnings and thereafter transmit the amounts applicable to Union dues, assessments, etc. as provided in paragraph 6 of the agreement between said company and U. M. W. A.; that subsequently, to wit, on June 6, 1938, the said plaintiff, Isaac Fisher, and certain other employees, filed with Stevens Coal Company a written notice that they had voluntarily relinquished their membership in Local No. 160, U. M. W. A., and expressing their desire to revoke, and revoking as of that date, the assignment executed June

26, 1936, by means of which the sum of $1. was deducted each month from their pay, and demanding their cards of the "check off" system and its discontinuance, and the payment to them of all check offs, not including death fund; that pursuant to its contract with the U. M. W. A. and the order of the plaintiff, it did, during the second half of the month of June, 1938, deduct from plaintiff's pay the sum of one dollar for union dues, which is claimed by the plaintiff in this suit; and that the officers of District No. 9, U. M. W. A., have notified defendant petitioner not to pay the said sum of one dollar or any part thereof to the plaintiff, and claim the said sum for the U. M. W. A., and it is expected that a suit will be entered by said District No. 9, U. M. W. A. against petitioner for the same.

Wherefore it prayed of the court leave to pay the sum of one dollar into court, and that the court order the said Isaac Fisher and District No. 9, U. M. W. A. to interplead as to which of them is entitled to the same; on which a rule to show cause was granted. Answers were filed by both Isaac Fisher and U. M. W. A.— equivalent to demurrers to a bill in equity—which asked for the dismissal of the rule, but after hearing it was made absolute and U. M. W. A. appealed, as set forth in the opening of this opinion.

It is clear that the position in which Stevens Coal Company finds itself is due to its own actions in signing the contract of May 7, 1936 with U. M. W. A. without making any provision or exception for the voluntary withdrawal of its employees from said U. M. W. A. during the term of said contract, and in later signing the contract with Isaac Fisher of October 8, 1937, agreeing to pay him $3.45 per mine car of coal loaded, without making any provision for withholding union dues to U. M. W. A. If in so doing it has made itself liable to pay either or both of said parties it cannot require them to interplead, for having entered into contracts with each of them, it cannot escape the liability which

may flow therefrom by paying the money withheld by it into court and calling upon them to interplead. Each of the parties contracting with Stevens Coal Company is entitled to have its rights under its respective contract litigated with the other party to the contract, and cannot be required to litigate it with one not a party to its contract, to the relief of the Stevens Coal Co.

The attempt is here made to litigate in an action at law the rights of U. M. W. A., an unincorporated association, not suable by such name, (*Grant v. Carpenters' District Council*, 322 Pa. 62, 185 A. 273; *Oster v. Brotherhood of Locomotive Firemen, etc.*, 271 Pa. 419, 114 A. 377; *Wolfe v. Limestone Council*, 233 Pa. 357, 82 A. 499), under a contract with Stevens Coal Company, which did not expire until May 1, 1939, by an order directing it to interplead with Isaac Fisher as to which of them is entitled to the sum of *one dollar* paid into court by Stevens Coal Company to the end that it might be relieved of further liability under the contract. See *McSorley v. Coyle*, supra.

In addition to the English cases under the Act of 1 and 2 William IV, c. 58, which are applicable to our practice, (see note to 1 Troubat & Haly's Practice, sec. 494, p. 272, Brightly's 5th Ed., 1880), cited by Mr. Justice CLARK in *Bechtel v. Sheafer*, supra, which squarely rule against the right to an interpleader in this case, we may also refer to *Belcher v. Smith*, 9 Bingham 82, 23 E. C. L. 270, where it was held that a party who, by his own act, is placed in a situation to be sued, cannot call on the court to substitute another defendant under the interpleader act, 1 and 2 William IV, c. 58.

See also *Maxwell v. Frazier*, 96 Pac. 548 (Oregon), where a land owner who employed two real estate agents, under separate contracts, to procure a purchaser for his real estate, was not permitted, upon a sale of the land, to require the two agents to interplead as to which was entitled to the commission for effecting

the sale. This was somewhat similar in its facts to *Schlessinger v. Smith (May, Appellant)*, 300 Pa. 154, 150 A. 297.

As the order appealed from would affect rights of the appellant, U. M. W. A., under its contract with Stevens Coal Company, which is seeking in this interpleader over one dollar to determine its contractual obligations with U. M. W. A., which was not a party to the original action, as well as its obligations to the plaintiff, Fisher, under a wholly different contract—controversies growing out of separate and distinct contracts entered into by Stevens Coal Company—it is not interlocutory, in the sense that it concludes and determines no rights of the appellant, for unless reversed it will affect and be determinative of substantive rights claimed or enjoyed by U. M. W. A. under the contract between them. If affirmed, the appellant cannot be restored to the status quo, as respects its rights under the contract with Stevens Coal Company.

The situation is wholly different from that which exists where the party seeking the interpleader has a fund in his hands, to which he disclaims title, which is claimed by two different persons, and he has not incurred any personal liability to either claimant with respect to the fund and has taken no position inconsistent with that of an impartial stakeholder.

Where a different situation is presented, by reason of the fact that the party asking for the interpleader has incurred an independent liability to either of the claimants or has expressly acknowledged the right of one of them, or has by contract made himself liable in any event to one or the other, and he does not stand indifferent between them, but has a contest of his own with the several claimants, an interpleader should not be ordered, and if it is improperly ordered in such circumstances, it will be reversed on appeal: *Bank of Taiwan v. Gorgas-Pierie Mfg. Co.*, 273 Fed. 660 (C. C. A. 3d Circuit to E. D. of Pa.); *Rauch v. Fort Dearborn*

*Nat. Bk.,* 79 N. E. 273 (Mass.) ; *Stephenson & Coon v. Burdett,* 48 S. E. 846 (W. Va.) ; *Maxwell v. Frazier,* 96 Pac. 548 (Oregon) ; *Paugh v. Delaware County Trust etc. Co.,* 62 Pa. Superior Ct. 523.

The case of *Silveus v. Sayers,* 67 Pa. Superior Ct. 8, relied on by counsel for appellee, in his motion to quash the appeal, is distinguishable on the facts. The report of the case is very brief, but a reference to the paper books shows the following: Silveus obtained a judgment against David L. Sayers, and on April 28, 1914, issued an attachment in execution thereon summoning James E. Sayers, Executor of the will of Ezra M. Sayers, deceased, as garnishee. In his answer to interrogatories filed the garnishee stated that he had in his hands as Executor of Ezra M. Sayers, deceased, assets of about $200,000, one-twelfth of which would be applicable to the share of David L. Sayers, or his assigns; and that on October 2, 1913 David L. Sayers had served notice on him that he had on October 1, 1913 sold and assigned his interest in the estate of Ezra M. Sayers to Henry C. Sayers; and entered a plea of nulla bona in the attachment. The plaintiff, Silveus, thereupon filed his petition for a rule on the garnishee and on Henry C. Sayers respectively to show cause why the latter should not be ordered to intervene and interplead and become a party to the action. Answers were filed by the garnishee and Henry C. Sayers, and later, the garnishee demurred to the rule. The court overruled the demurrer and made the rule for an interpleader and feigned issue therein absolute. The garnishee and Henry C. Sayers—not the *defendant,* as stated in the report of the case, p. 8—joined in *one* appeal. One unusual feature about this case was that the rule for an interpleader was not obtained by the stakeholder, who is *the* party authorized to ask for an interpleader in such cases, but by the plaintiff in the judgment and attachment. This was not adverted to by the court. No money was paid or ordered paid into

court. But it appeared that the garnishee was a mere stakeholder, having no interest in the fund, and without any controversy of his own to be settled in the cause; that he stood indifferent between the rival claimants and had not acknowledged the title or right of either of them nor made himself liable by contract to one or the other. The order making the rule for an interpleader absolute had no effect on the substantive rights of any of the parties and the appeal was therefore interlocutory and was quashed for that reason. It cannot be applied to the facts of this case.

We do not refer to cases dealing with sheriff's interpleaders for they are governed by special legislative enactments.

While it is the evident intention of the legislature that actions in contract for less than $100 shall be brought before a justice of the peace, alderman or magistrate, and section 3 of the Act of March 20, 1810, 5 Sm. L. 161, 42 PS sec. 661, provides that "if the demand shall not exceed five dollars and thirty-three cents" the judgment of the justice shall be final, there does not seem to be any statute making the jurisdiction of the justice exclusive in such cases. The penalty fixed for bringing an action for less than $100 in the common pleas is that the plaintiff shall not recover costs in such suit: Sec. 26 of Act of March 20, 1810, supra, 42 PS 791.

The motion to quash is overruled. The order of the court below is reversed and the record is ordered remitted to the court below with directions to discharge the rule for an interpleader at the costs of Stevens Coal Company, the appellee.