## Clyde v. First National Bank of Chester

*Robert W. Beatty*, for plaintiff.

*Paul Lane Ives*, for defendant.

*Edward H. P. Fronefield*, for claimant.

SWENEY, J., March 8, 1945.—This case comes before us upon a petition and rule to vacate an order of interpleader and to dismiss the petition for interpleader.

Plaintiff, Samuel D. Clyde, trading as Sweeney and Clyde, a real estate broker, brought this action in assumpsit against defendant, The First National Bank of Chester, to recover a commission alleged to have been earned by plaintiff under an oral contract of employment for the sale of certain real estate owned by defendant. The statement of claim averred that the real estate in question was sold to one John T. Hill, and that plaintiff "was the inducing and procuring cause of the sale of said premises by the defendant to John T. Hill".

Defendant, without filing an affidavit of defense, presented a petition for interpleader under Pa. R. C. P. 2303 (a), alleging that Maurice Swimmer, another real estate broker, had made a demand upon petitioner for the same commission on the ground that he had produced the said John T. Hill and Florence V. Hill, his wife, as purchasers of the said property, and was the inducing cause of the sale to them. Defendant, in its petition, disclaimed any interest in the money in controversy, averred its ability and willingness to pay or deliver the said money into court or to such person as the court might direct, and further averred "that the defendant has not admitted the claim of, or subjected himself (sic) to independent liability to, the plaintiff or any claimant in respect to the subject matter of the action".

A copy of the petition was served upon plaintiff's attorney. See Pa. R. C. P. 2305 (a). No answer was filed by plaintiff within 20 days of such service. See Pa. R. C. P. 2305 (b). The court directed an interpleader under Pa. R. C. P. 2306; and also entered an order under Pa. R. C. P. 2307, directing the payment of the money in controversy into court, and providing that the defendant should be discharged, upon payment of said money into court, of all liability to the plaintiff and to any interpleaded claimant who had been served as required by the rules, in respect to the money so paid.

Subsequent to the entry of the order directing an interpleader, the sheriff of this county served upon claimant, Maurice Swimmer, a copy of the petition and order and a copy of all pleadings theretofore filed in the action. See Pa. R. C. P. 2308(a). A copy of the order was served upon plaintiff's attorneys. See Pa. R. C. P. 2308(b).

Claimant, Maurice Swimmer, filed no statement of his claim against defendant, as required by Pa. R. C. P. 2309, but obtained a rule against plaintiff and defendant to show cause why the order of interpleader should not be vacated and why the petition to interplead should not be dismissed. Claimant's petition avers,. inter alia, that he was the inducing cause of the sale of the real estate in question to the ultimate purchasers, and, further, that he submitted an offer from a different purchaser who was ready, able and willing to pay the price on the conditions and terms made by defendant, by reason of which he is entitled to a commission for the sale of said real estate. (In passing, it may be noted that the claimant wholly fails to aver his employment by defendant. A mere volunteer is not entitled to commissions though he brings the parties together and is the efficient cause of producing the sale: Lanard & Axilbund v. Thompson Printing Co., 84 Pa. Superior Ct. 199, 201.) The petition further avers that claimant was never served with a copy of the rule to show cause why interpleader should not be granted, and had no opportunity to answer the same or to be heard by the court; that this court should not have entered an order against him directing him to interplead without a rule "having been granted on him and without giving him an opportunity to be heard as to whether or not this was a case in which an interpleader should be granted". Claimant avers in his petition, "that the facts of this case disclose that the claims against the First National Bank of Chester arise by reason of separate agreements or contracts between the bank and the respective claimants, and that it is not a situation

in which the two claimants are claiming a single fund in the hands of the First National Bank of Chester".

Defendant filed an answer to claimant's petition in which, inter alia, it denied that the petitioner submitted an offer from a different purchaser pursuant to the terms and conditions made by defendant; admitted the allegations of claimant's petition relating to the granting of the interpleader without notice to claimant; and averred that the interpleader was properly granted. Plaintiff filed no answer to the petition.

We are of the opinion that claimant's objection to the entry of the order directing him to interplead, without a rule having been granted on him, and without an opportunity having been given him to be heard, is without merit. The proceedings in this case for interpleader were in exact conformity with the practice prescribed by the Rules of Civil Procedure. Those rules make no provision for notice to claimant prior to the entry of the order of the court directing the interpleader. See Pa. R. C. P. 2308. In Goodrich-Amram, sec. 2305 (a) 1, it is said:

"Before the court can act on the petition for interpleader, defendant must serve a copy of the petition upon plaintiff in the action. It should be particularly noted that no copy is served on claimant, because he does not participate in the hearing on the petition for his own interpleader. At the hearing, only petitioning defendant and plaintiffs or other defendants then of record may be heard."

In a note to the same section, the authors point out that under prior practice it was possible to obtain an award of interpleader either upon a rule to show cause or by a writ of scire facias; and that, in either case, claimant participated in the hearing to determine whether an interpleader should be directed. The reason for the change in the practice in this regard is not explained. Nevertheless, it is clear that the present claimant is without standing to complain that he was

not given an opportunity to object to the entry of the order granting the interpleader.

Defendant argues that where the proceedings and the petition for interpleader are in conformity with the Rules of Civil Procedures, and the court enters a decree of interpleader thereon, a claimant may not have the decree revoked and the petition for interpleader dismissed upon petition and rule. As we are of the opinion that claimant's petition fails to set forth reasons sufficient in law for the revocation of the decree and the dismissal of the petition to interplead, and that the rule, accordingly, must be discharged, we find it unnecessary to decide the procedural question.

It seems clear to us beyond peradventure that the facts before us present a situation where an interpleader should be granted. The fact that the claims against defendant arise by reason of separate agreements or contracts between defendant and the respective claimants, is immaterial in view of the inherent nature of the contracts. And we think the dual nature of claimant's claim against defendant is of no consequence in its bearing on the question.

The purpose behind the procedural device of interpleader is to protect the defendant from double or multiple liability to the plaintiff and a claimant, or claimants, as to all or any part of the claim asserted by the plaintiff. The danger of such double or multiple liability exists wherever the respective claims are mutually inconsistent and contradictory. As said in the note of the Procedural Rules Committee to Rule 2303(a): "Under the rule, it is not necessary that each claimant demand the identical thing or assert the identical right. If the recognition of a right in one claimant excludes the possibility of any right as claimed by any other claimant an interpleader is proper." And in Goodrich-Amram, sec. 2303(a)-3, it is said: "Interpleader may be granted . . . even though the same claim is not asserted or the same relief is not demanded by both claimants. The only essential element is that the re-

spective claims are mutually inconsistent and if enforced in separate actions would expose the defendant to double liability in regard to the same matter."

Each of the claimants in this case contends that he was the efficient cause of the sale of the real estate to the Hills. It does not seem possible, in the light of reason, that each can be the efficient cause of the one sale. In this instance, reason is buttressed by authority. "Two brokers cannot each be the efficient cause of a sale": Wilson et al. v. Franklin, 282 Pa. 189 (syllabus). The same rule prevails in other jurisdictions. See Dardonville v. Smith et al., 133 App. Div. 234, 117 N. Y. S. 216; Whitcomb et al. v. Bacon, 170 Mass. 479, 49 N. E. 742. In the case last cited, it is said (p. 482) :

"In determining what constitutes proximate cause, the same considerations apply equally in actions of contract and of tort. . . . It may be that there are different causes which assist in producing a result, and that the result would not have happened if either one of the different causes had been wanting. A familiar example is found in cases where there has been a delay by a carrier in transporting goods, which are afterwards destroyed by flood or fire. . . . So where several brokers have each endeavored to bring about a sale which finally is consummated, it may happen that each has contributed something without which the result would not have been reached. One may have found the customer who otherwise would not have been found, and yet the customer may refuse to conclude the bargain through his agency; and another broker may succeed where the first has failed. In such a case, in the absence of any express contract, that one only is entitled to a commission who can show that his services were the really effective means of bringing about the sale, or, to use the language of Phillips, the predominating efficient cause."

See, also, 12 C. J. S., Brokers, §92.

We think it is clear, without more, that the respective claims of Clyde and Swimmer, insofar as they are

grounded on the allegation of each that he was the efficient cause of the sale, are mutually inconsistent, and if enforced in separate actions would expose defendant to double liability in regard to the same matter. Interpleader, therefore, is properly granted. "An interpleader will be granted to determine which of two brokers is entitled to a commission upon the sale of property when only one of them is entitled to recover": Goodrich-Amram, sec. 2302-4. See 33 C. J., Interpleader, §25. In Brooke et al. v. Smith et al., 2 Dist. R. 767, the court granted an interpleader where the facts were substantially identical with the facts before us.

Whatever may have been the rule in the past, we are convinced that under modern practice a defendant is not to be denied the right of interpleader merely because the claims against him arise by reason of separate agreements or contracts between him and the respective claimants. The matter is well summed up in Dardonville v. Smith, supra, a case which also involved adverse claims to a brokerage commission on a sale of realty. The court said (p. 235) :

"The case at bar presents a single sale of real property, with two brokers claiming the right to the commission. One only could have procured the purchaser and been the procuring cause of the sale. The contracts, although separate, were for the same service, and the transaction is not an unusual one. The plaintiff is liable only to the one who procured the purchaser to whom she sold, but being unable to determine between them, unwilling to assume the risk of so doing and having been sued by one in a court without jurisdiction to accord the right of interpleader, brought this action that she might, by the payment of the money into court, be relieved from further liability. These facts, if established, entitled the plaintiff to the relief sought.

"The learned Special Term is shown by the record to have dismissed the complaint upon the sole ground that the agreements upon which the defendants base their rights to commissions were separate and independent,

and that, as matter of law, an action of interpleader could not be maintained. While this was unquestionably the rule as laid down by the early authorities, it has of later years been modified in many cases, and wholly ignored in others, as is pointed out in Crane v. McDonald (supra), and at the present time we do not regard it as controlling in this State. As Mr. Pomeroy well says in his Equity Jurisprudence (§1324, note) : 'It is a manifest imperfection of the equity jurisdiction that it should be so limited. A person may be and is exposed to danger, vexation and loss from conflicting independent claims to the same thing, as well as from claims which are dependent; and there is certainly nothing in the nature of the remedy which need prevent it from being extended to both classes of demands.' "

The case at bar, in our opinion, is not ruled by the decision in Fisher v. Stevens Coal Co. et al., 136 Pa. Superior Ct. 394. In that case, plaintiff brought suit against defendant to recover the sum of $1, alleged to be the balance due him for work and labor performed under a written contract of employment by which the defendant agreed to pay him $3.45 per mine car of coal loaded. Defendant filed a petition for interpleader in which it averred, inter alia, that it had entered into a contract with District No. 9 of the U. M. W. A., under the terms of which it was bound, upon receipt of an assignment from an employe, to deduct certain dues and assessments from the earnings of such employe and transmit the same to the officers of the union; that plaintiff, Fisher, had delivered such assignment to defendant; that subsequently, said plaintiff, and other employes, had filed with defendant written notices that they had withdrawn from the union and desired to revoke the assignment by means of which the sum of $1 was deducted each month from their pay; and that the said sum of $1 was claimed by the officers of the union who had notified defendant petitioner not to pay it to

plaintiff. It was held, reversing the court below, that the case was not one for interpleader. As we read the opinion, however, the decision was not based solely on the ground that the claims against defendant arose by reason of separate contracts between defendant and the respective claimants, but on the additional fact that the respective claims were not mutually inconsistent and contradictory We think this is evident in the following language of the opinion (p. 408) :

"It is clear that the position in which Stevens Coal Company finds itself is due to its own actions in signing the contract of May 7, 1936, with U. M. W. A., without making any provision or exception for the voluntary withdrawal of its employees from said U. M. W. A. during the term of said contract, and in later signing the contract with Isaac Fisher of October 8, 1937, agreeing to pay him $3.45 per mine car of coal loaded, without making any provision for withholding union dues to U. M. W. A."

It is elementary that "if the circumstances of a case show that plaintiff (defendant) is liable to both claimants, that is no case for interpleader": 33 C. J. Interpleader, §21. See Goodrich-Amram, sec. 2303(a)4.

The case of Frank C. Snedaker & Co., Inc., v. Wayne T. & T. Co., 139 Pa. Superior Ct. 381, is distinguishable from the one at bar on precisely the same grounds as the Fisher case, supra. In the Snedaker case, the claims against defendant were based upon separate contracts with defendant, but these contracts were not in their nature mutually exclusive, as will be seen from the following excerpt from the opinion (p. 385) :

"We have, therefore, (1) an insurance contract entered into by defendant trust company with plaintiff for a consideration paid by plaintiff, under which defendant agreed to guarantee to plaintiff the payment of the consideration for a sub-contract entered into by plaintiff with Roberts Construction Company, contractor for a building being erected for Miller the owner; (2) a fund deposited or left with defendant

trust company by Miller as indemnity against loss from making that and other insurance contracts for the completion of the building and against liens; (3) an attempt by defendant trust company to escape responsibility on both contracts made by it by requiring plaintiff and Miller to interplead, although plaintiff claims no rights to Miller's deposit and Miller has no personal responsibility for payment of plaintiff's bill, beyond his agreement that his deposit shall be held to indemnify defendant against loss on its insurance contracts."

The case of Leach et al. v. Brothers et al., 44 D. & C. 438, relied upon by the claimant, is identical, in principle, with both the Fisher and Snedaker cases, and involved adverse claims to a brokerage commission on a sale of realty. Plaintiff, Leach, based his right to recover upon an oral contract of employment for the sale of defendant's property. Pritchard, claimant, relied upon a writing signed by one of the defendants, authorizing him to act as "my agent for the completion of this sale", and agreeing to pay him a commission of $300. The court, on plaintiff's petition, revoked an order of interpleader theretofore entered by stipulation, on the ground that "one of the defendants had and, if plaintiff's allegations be correct, both defendants have subjected herself or themselves to independent liability to Mr. Pritchard, if he closed the sale", within the meaning of Pa. R. C. P. 2306(a). We are inclined to doubt the applicability of that rule to the facts. In Goodrich-Amram, §2306(a)3, it is said:

"By independent liability is meant a legally enforcible liability to which defendant becomes subject after the cause of action against him arose." And in a note to the same section, it is said:

"*The independent liability here considered must be distinguished from the original liability sought to be enforced by both claimants.* At one time it was apparently thought that interpleader must be denied if the original liability was based upon a contract with one

of the parties. Such a view would limit the availability of interpleader to cases where defendant found property and two persons, each claiming to be the owner, demanded the return of the property, and would prohibit interpleader in bank deposits, insurance and similar cases *in which one or both of the claimants has had direct contractual relations with the defendant. This narrow view had been rejected under the prior practice.*" (Italics supplied.)

We think the true situation in the Leach case was that both claimants were seeking to enforce an original liability, which arose from direct contractual relations, on the part of each claimant, with the defendant. But it is clear that the respective claims were not mutually inconsistent and contradictory. The assertion of one claim was not the negation of the other. The facts were such that defendants could be liable to both claimants. Thus, the court pointed out that defendants "may have become liable to Mr. Pritchard by virtue of an explicit contract with Pritchard that he was to close the sale". If it is true that two brokers cannot each be the efficient cause of a sale, and our own authorities so hold, then the assertion of Clyde's claim implies the negation of Swimmer's claim, and vice versa. (We will consider later the additional claim asserted by Swimmer.)

The case of Fronefield v. The Pennsylvania Co., etc., 32 Del. Co. 283, in which our President Judge thoroughly considered the subject of interpleader between rival brokers, is distinguishable on the same grounds as the Leach case, supra.

Claimant relies heavily on the case of Maxwell v. Frazier et al., 96 P. (Ore.) 548, another case involving claims of rival brokers to a commission. The court, there, refused an interpleader. But the decision turned principally, if not exclusively, on the absence of privity between the claimants. The court said (p. 549) :

" 'One of the essential requisites to equitable relief by bill of interpleader is that all the adverse titles of the respective claimants must be connected or dependent,

or one derived from the other, or from a common source. There must be privity of some sort between all the parties, such as privity of estate, title, or contract, and the claims should be of the same nature and character . . .' "

It is more than doubtful whether it has ever been the law in this State that interpleader could not be allowed unless there was privity between the several claimants. Our appellate courts have followed the broader and proper standard of mutual exclusiveness or inconsistency. In any event, the law is clear at the present time. "The court shall not deny the petition merely because there is no privity between any of the parties of record or the claimants or their claims do not have a common origin": Pa. R. C. P. 2306 (c) 2.

Claimant argues that the decree should be vacated and the petition to interplead should be dismissed on the further ground that, in addition to his claim against defendant for commission as the inducing cause of the sale, he has another and separate claim against defendant for commission, in that he produced a different purchaser for the same real estate, ready, able and willing to pay the price on the conditions and terms made by defendant. We believe that the danger of double liability with respect to the one claim warrants the decree, and that claimant's assertion of a separate and unrelated claim is immaterial. In Goodrich-Amram, §2303 (a) 4, it is said:

"The possibility of double liability is not required as to all the items included in the claims of the adverse party and plaintiff. When several matters are joined in a single action, double liability may exist as to certain items only, but this is sufficient to warrant interpleader."

In Fulforth, Admx., et al. v. Prudential Ins. Co. of America, 147 Pa. Superior Ct. 516, an interpleader was granted as to one policy of insurance in a suit on three policies issued by defendant. Moreover, as de-

fendant points out, the order of interpleader entered in these proceedings does not bar Swimmer from making any claim against defendant that he cares to make, with the single exception of a claim for commission as the inducing cause of the sale to Hill and his wife, which Clyde also claims.