DeJohn *v.* Orell, Appellant.

Argued March 18, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Francis H. Patrono,* with him *Robert D. Beck,* and *Patrono, Ceisler and Edwards,* for appellant.

*Richard DiSalle,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 16, 1968:

Dominick F. DeJohn, Jr., Thomas DeJohn, and Marino T. DeJohn were passengers in an automobile being operated by Leonard L. Orell in a westwardly direction on Route 40 in Fayette County. At a point some 10 miles east of Uniontown, the Orell car collided with a car being driven by a Frank Gleba in the opposite direction. As the result of the collision, Dominick and Thomas DeJohn were seriously injured and Marino DeJohn was killed. The two surviving passengers and the administratrix of the estate of the deceased Marino DeJohn brought an action of trespass against Leonard Orell, charging that, just before the collision, he suddenly and without warning recklessly and negligently drove his automobile into the path of the oncoming Gleba car.

At an ensuing trial the jury returned a verdict in favor of the defendant Orell. The plaintiffs moved for

a new trial asserting that the trial judge had erred in instructing the jury on contributory negligence, had improperly curtailed cross-examination of a defendant's witness, and had submitted a communication to the jury, in answer to a query from them, without first summoning counsel into the courtroom.

Since there was no evidence that the three DeJohns had contributed in any way to the happening of the accident, it was error on the part of the trial judge to charge on contributory negligence. In the case of *Thomas v. Tomay,* 413 Pa. 270, this Court reversed a verdict where the trial judge had charged on contributory negligence which was nonexistent. Justice O'BRIEN, writing for the Court, said: "The defendants offered no evidence to establish contributory negligence of the plaintiffs or any evidence from which contributory negligence could be inferred on the part of plaintiffs. In such circumstances, it was error to submit the question of contributory negligence to the jury when no evidence existed from which the jury could find it. The plaintiff's cases revealed no contributory negligence and no evidence was offered by defendants. A jury should not be permitted to make a finding of material fact in the absence of evidence to support the finding."

In the case at bar, the trial judge referred to contributory negligence not casually or merely in passing. He gave it full dress treatment. He defined contributory negligence at length and played it in massive chords on the piano of his instructions. He said: "If a motorist falls asleep or dozes while he is driving an automobile, he is guilty of negligence. If he drives an automobile while he is in such a state of exhaustion that he dozes even though he does not intend to do so, he is equally negligent. This is further complicated by the possible inference that *if Orell were really dead on his feet and in no condition to drive, the DeJohns*

*may have been guilty of contributory negligence in riding with him if they knew this.*" (Emphasis supplied.)

There was no evidence that Orell was dead on his feet. In the first place he was not driving standing up, and he was very much alive, testifying vigorously at the trial. Nor was there any evidence that the plaintiffs were aware of any hypothetical autosomnanbulism.

To charge a jury that if they find the plaintiff carried a blazing torch he may not recover because of contributory negligence when there was no suggestion in the case that he even carried a safety match would be clearly reversible error. When a judge beats a tattoo on a given subject the jury may begin to believe they hear invisible and nonexistent drums. It is not only easy but almost psychologically compelling for a jury to assume that since the judge talks about a given situation that it must have living reality. The trial judge here referred to contributory negligence some five times in his charge. At the end of his instructions, the attorney for the plaintiffs took the following exception: "Also, we object to the judge's remarks and charge on contributory negligence, as there was no suggestion of any contributory negligence on the part of the plaintiffs in any manner whatsoever and, specifically, there was no evidence that any of the plaintiffs knew that the defendant was sleepy or exhausted."

The judge did modify his charge on contributory negligence, so far as the deceased passenger was concerned, by saying: "In the case of the decedent, the presumption of due care applies." This instruction could have been Egyptian hieroglyphics because he did not explain what was meant by "presumption of due care," and plaintiffs' attorney took an exception to this also,

A witness called by the defendant testified that the defendant was traveling at a speed not exceeding 50 miles per hour, explaining that he was in a line of traffic that was moving at from 50 to 60 miles per hour. This witness, Jack Morrison, had testified at the coroner's inquest that most of the cars were traveling at from 60 or 70 miles an hour. The plaintiffs' attorney endeavored to cross-examine him on this differentiation in testimony. The defendant's attorney objected and the court sustained the objection. Plaintiffs' attorney then said to the court: "At this time, I will offer to cross-examine the witness on this part of the statement which reads, 'Most of the cars did about 60 or 70 miles an hour on this stretch of road. This is in view of this statement that Mr. Orell was keeping up with the line of traffic that was passing this witness." The court replied: "Refused for two reasons. One, I've already ruled on the point and, two, you've already got it in that this line was going between 50 and 60."

The fact that the judge had already ruled would not be a conclusive reason for refusing the requested cross-examination. A judge can be wrong and he can also admit he was wrong and change his ruling. Nor is there indication of infallibility in the present instance. In point of fact, the judge *was* wrong.

The credibility of a witness is the most substantial element of his qualifications as a witness. Without credibility a witness is a figure of straw; his words are but shredded syllables in the winds of controversy; and he is a phantom in a gathering of serious persons convened for a serious purpose. And nothing can be more determinative of the credibility of a witness than a questioning into statements theretofore made by him on the subject to which he now addresses himself. Morrison had testified at the coroner's inquest that Orell

was traveling in a line of cars moving at from 60 to 70 miles per hour. At the trial he said Orell was operating at 50 miles per hour. If Orell was in a line moving at 60 to 70 miles per hour, he had to maintain that same pace or otherwise be struck by the car immediately behind him, which did not happen. Speed is always an issue where negligence in the operation of a moving vehicle is under consideration.

In *Commonwealth v. Rothman,* 168 Pa. Superior Ct. 163, the defendant was charged with accepting bribes in connection with supervising examinations for registration of pharmacists. A certain Reider testified against the defendant. Defendant's counsel endeavored to cross-examine Reider on an alleged previous statement wherein he had said that someone else had committed the crime, or an integral part of it. The court refused to allow the cross-examination. The defendant was convicted, and the Superior Court reversed. Judge ARNOLD, later a justice of the Supreme Court, speaking for the Court, said: "This cross-examination went directly to the credibility of the witness, Reider, and the defendant's right thus to cross-examine and impeach the witness was not dependent upon the discretion of the court. It was a right of the defendant which could not be denied. Here the matter was directly connected with the guilt of the defendant. We have never before heard of such right being denied a party to an action, either civil or criminal, nor that there was a discretion in the court to allow or disallow any such cross-examination. It is only where the cross-examination relates to contradiction on a collateral issue that there is a discretion in the trial judge. Probably because the matter is so well understood, there are few cases to be found in the books, the principal one being Commonwealth v. Disalvo, 275 Pa. 70, which held that it was not error to permit the Com-

monwealth to show that witnesses of the defendant had made statements contrary to their testimony."

The court below ordered a new trial on the proposition that, in accordance with rulings by this Court, it should not have communicated with the jury after it had retired. The facts are as follows: During deliberation by the jury, it sent to the judge, a note reading: "In regardless of how we find Orell, do we still have to set the amount of damages, if any."

The judge replied by note: "Only if you find Orell guilty of negligence which was the proximate cause of the accident do you even get to the question of damages. If there is no negligence, the matter of 'how much' will not be considered."

Approximately an hour later the jury sent another note to the judge: "If we find Orell not guilty, does the court make the settlement to the DeJohn family?"

The judge now summoned counsel, which he had not done on the occasion of the first note, and, in their presence, read aloud the first question which had been propounded by the jury and his answer thereto. He then, again in the presence of counsel of both sides, read the second question, and answered it fully. He made this entire proceeding part of the record. None of the attorneys offered any objection to the proceeding, and this full disclosure of what had occurred, together with the more than ample instruction to the jury on the point involved, cured any fault which may have occurred when the judge answered the first question, without counsel present.

Nevertheless, the judge ordered a new trial, explaining that he felt compelled to do so because of rulings laid down by this Court in *Gould v. Argiro*, 422 Pa. 433, *Kersey Mfg. Co. v. Rozic*, 422 Pa. 564, *Yarsunas v. Boros*, 423 Pa. 364, and *Argo v. Goodstein*, 424 Pa. 612.

366

In *Argo v. Goodstein*, the majority of this Court declared that the rule mandating a new trial when the judge communicates with a jury in the absence of counsel is "prophylactic." The writer of this opinion considers that rule more didactic than prophylactic because, under its literal interpretation, a two-month trial could become invalidated if the jury sent a note to the judge asking what time they would have dinner, and the judge, without summoning counsel to hear his portentous announcement, replied to the jury: "6 o'clock."

Even so, the court below extended the *Argo* decision beyond what it stated. In view of the fact that all the attorneys approved of what the judge had done, and since the law was correctly stated, and, obviously, no one was harmed by what had occurred, it was an act of supererogation on the part of the trial judge to order a new trial for the reason he gave. However, the other errors here outlined demand a new trial and, accordingly, the ordering of a new trial is affirmed.

Affirmed.

Mr. Justice COHEN, Mr. Justice EAGEN and Mr. Justice O'BRIEN concur in the result.

Mr. Justice JONES dissents.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.