## Edwards *v.* Johnson et al., Appellants.

Argued April 15, 1969.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Justin M. Johnson,* with him *Johnson, Johnson & Johnson,* for appellants.

*Alexander Black,* with him *K. Sidney Neuman,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

*Lisle A. Zehner,* for appellee.

OPINION BY CERCONE, J., November 14, 1969:

Mary Louise Edwards, claimant, employed the law firm of Johnson, Johnson & Johnson of Pittsburgh, to represent her in her claim against the Metropolitan Life Insurance Company as beneficiary under a family policy issued on the life of one Joseph Rumble, who died July 10, 1959, just four months after purchasing the policy. A written agreement between the Johnson firm and claimant provided that the attorneys were to receive forty (40%) per cent of any recovery, whether by settlement or trial. The insurance company at first refused payment on the ground that despite her designation in the policy as "wife", claimant was not legally married to decedent and that she and the deceased had defrauded the company in so misrepresenting a material fact in a family policy of the kind issued to the deceased, Joseph Rumble. Upon learning of the company's refusal and position in the matter, the Johnson firm upon request of the claimant filed a complaint in her behalf against Metropolitan. Metropolitan filed an answer formally denying liability on the ground that fraud had been practiced upon it by both the decedent and the claimant.

Nothing happened in the case until November, 1965, when Metropolitan advised Johnson that it was prepared to amicably settle the suit for the commuted value of the policy, and on December 2, 1965, claimant authorized Johnsons, her lawyers, to accept one of the optional modes of settlement made available to her under the policy and this acceptance was communicated to Metropolitan which in turn replied

that a release would issue as soon as birth certificates of the children and of the claimant's intervening marriage to a Mr. Edwards were forwarded. The total proposed settlement amounted to $20,091.92 consisting of $17,323.99 cash and policies valued at $2,767.93. The attorney's fee of forty (40%) per cent under the written agreement with claimant amounted to $8,036.-77.

However, after receipt of the birth and the marriage certificates, Metropolitan refused to send a check for the total settlement amount which check they had already prepared as payable to claimant and Johnsons because the Company had received word from a member of the Allegheny County Bar Association, with whom claimant, without Johnsons' knowledge, had conferred, that the forty (40%) per cent fee was being contested.[1]

Claimant then brought the matter before the Allegheny County Bar Association and Attorney William Jacob, Vice President of the Committee on Offenses of the Common Pleas Court of Allegheny County, made an investigation of the case studying the Johnson files and submitting a report to the Committee in which he concluded that there was no impropriety in the case on the part of the Johnson firm and that the attorneys had earned their fees. Metropolitan nevertheless did not release the settlement. The Johnson firm in order to further expedite the settlement, and by agreement with Metropolitan, secured from claimant an express assignment to the Johnsons of the forty (40%) per cent of the recovery amount, the assignment having

---

[1] This intervention by an attorney in a case where another lawyer has already been retained is fraught with danger in the field of professional ethics especially when he acts without advising retained counsel. In such circumstances, the canon of ethics regarding transactions and negotiations among lawyers should always be carefully studied and observed.

been prepared by Mr. Jacob of the Committee on Offenses. The assignment was then forwarded to Metropolitan. Despite the assignment which would have entitled the Johnson firm to receive a check for the forty (40%) per cent fee in their name alone, they were agreeable to having the Company issue one check to claimant for her portion of the cash settlement and one check jointly to claimant and themselves for their forty (40%) per cent fee. Claimant thereafter, without any knowledge or notice of Johnsons, notified Metropolitan not to honor the assignment claiming she was coerced into signing the same. Metropolitan never advised Johnsons of the communication from claimant and yet permitted Johnsons to secure court approval of the settlement, to mark the case settled and discontinued, and to forward a certificate of satisfaction to Metropolitan.

Despite knowledge that claimant would not honor or endorse the check for the attorneys' forty (40%) per cent fee, Metropolitan, nevertheless, sent to claimant the check for her portion of the settlement. Johnsons, because of claimant's refusal to sign the check jointly payable to her and the Johnsons, did not receive their fee and Metropolitan refused to pay them directly because of the revocation of the assignment by claimant. At this point in the case, Metropolitan asked that one of the parties bring suit against it in order that it could interplead the funds.

Claimant thereupon instituted an action in assumpsit against Metropolitan for the amount still unpaid to her, that is, of the attorneys' fee, plus interest. Metropolitan then interpleaded, joining Johnsons as adverse claimants to the fund, and paying into court the $8,036.77 plus interest. The Johnsons petitioned for a rule to show cause why the order granting the interpleader should not be vacated and the interpleader stricken, which petition was denied

and from which no appeal was taken by Johnsons. Upon rejection of their petition to strike the interpleader, Johnsons filed their claim in the interpleader proceedings setting forth the history of the case, the contingent fee agreement and the assignment. They claimed that by virtue of agreement and assignment, the $8,036.77 should be paid to them. Claimant filed no answer to this complaint and as a result, after due notice to her, and after hearing, the Honorable ALBERT A. FIOK entered judgment against her and in favor of Johnsons. Claimant filed a petition to open, vacate or modify that judgment, but the petition was denied by Judge ALDISERT. The said orders of Judge FIOK, granting judgment in favor of the Johnsons, and of Judge ALDISERT, refusing to open, vacate or modify that judgment, were appealed by claimant to this Court as Nos. 27 and 28 April Term, 1968, and we affirmed per curiam the lower court in both instances (*Edwards v. Metropolitan Life Insurance Company*, 212 Pa. Superior Ct. 751). Claimant filed with the Supreme Court of Pennsylvania a Petition for allowance of appeal to that Court, which petition was denied at Miscellaneous Docket No. 3042-A on August 13, 1968.

Metropolitan then petitioned for discharge from liability and for allowance of costs and attorneys' fees from the interpleader fund. Johnsons added their petition for payment of the entire fund to them. Hearing was held on said petitions before His Honor Judge WESSEL, in which Metropolitan sought to acquit itself of the charges that it had unlawfully interfered with Johnson's contingent fee agreement and that it was not an impartial stakeholder. Claimant sought to show that the Johnsons had not earned a forty (40%) per cent fee and had not treated her properly in the case.

After an extensive hearing, Judge WESSEL handed down an opinion concluding that claimant had been

fully informed by Johnsons as to the content of the 60-40% contingent fee contract when she signed the same, that Johnsons "acted for the best interest of their client, they have done good work, and certainly deserve the compensation to a good steward, so to speak;" but that, "on the basis of the plaintiff's complaint of this dire need of funds and because of the minors involved—we feel that the claim of 60-40 should be reduced." Accordingly the court reduced the Johnsons' fee from $8,036.77 to $6,500 and allowed Metropolitan costs and attorneys' fees not to exceed $500.-00, and awarded claimant an additional $1,132.84. Judge WESSEL discharged Metropolitan of all liability to Johnsons.

Johnsons have appealed from the December 3 and 5, 1968, orders of Judge WESSEL contending: (1) the pattern and course of conduct of Metropolitan in interfering in the attorney-client relationship here involved was such as to absolutely preclude its asserted right to recover costs and counsel fees, and bars its discharge from an interpleader action brought about solely through its own deeds; (2) the parties may not relitigate an issue once it has finally been decided on appeal, nor will equity permit the unjust enrichment of a party such as claimant who knowingly contracts for, accepts, and benefits from her attorneys' services.

Johnsons also appealed from the refusal of their Petition for Rule To Show Cause why the Order Granting the Interpleader should not be vacated and the Interpleader Stricken. However, it is now too late to appeal from the grant of the interpleader since the refusal of the Johnsons' Petition to strike off the interpleader was, under the facts of this case, a final and not an interlocutory order. This is so, because in their Petition Johnsons denied the following: that Petition for Interpleader was filed in good faith, that it was not in collusion with any party to the actions,

that Metropolitan had no interest in the money in controversy; they set forth Metropolitan's stated interest in the fund, and further alleged various improper actions on the part of Metropolitan in its conduct toward the other parties in the case. The Johnsons denied therein that Metropolitan had not admitted the claim of one of the parties. In effect, Johnsons contended that on the basis of their denials and allegations of their petition to strike, the interpleader was not a proper action because Metropolitan was not an impartial stakeholder. Thus, the court's order granting the interpleader and rejecting Johnsons' petition was a final and appealable order and Johnsons should have appealed from that order if they had so desired. Having failed to timely appeal therefrom it was now too late to do so. As stated in *Fisher v. Stevens Coal Co.*, 136 Pa. Superior Ct. 394, at pages 396-397: "But where the petition for interpleader shows on its face that the petitioner is not a mere stakeholder, but has an interest in the controversy, or has taken some action recognizing the claim of one of the parties as valid, as over against the other, or has incurred a personal liability to either claimant or to both claimants, or has taken any other position that is inconsistent with that of an impartial stakeholder, so that the order of the court directing the money to be paid into court and the claimants to interplead with reference thereto will affect the substantive right of recovery which either of the parties claimant may have against the petitioner as a debtor growing out of a contractual obligation between them,—or where this fact otherwise clearly appears on the rule granted on the petition—the order of the court in such event is not interlocutory but is definitive and determinative of substantive rights and is therefore appealable."

The later case of *Winnet v. Brenner*, 409 Pa. 150, noted such to be the general rule and after quoting

from the *Fisher* case, distinguished it by holding that the party interpleading was a naked stakeholder with no interest in the fund.

We need not determine the further issue raised by Metropolitan that since the additional plaintiffs (Johnsons) were served and brought on the record only after the order of Interpleader was made only the original plaintiff can attack the Interpleader.

It does not follow, however, that because Johnsons cannot now appeal from the grant of the Interpleader that they cannot appeal from the lower court's distribution of the interpleaded fund and the grant of the costs and attorney fee to Metropolitan. Metropolitan argues that once an interpleader is granted and the money is paid into court, the court is without any discretion but to discharge it from further liability and from further costs and to allow it costs and a reasonable attorney fee. However, we do not agree. Rule 2307 of the Pennsylvania Rules of Civil Procedure provides: "(a) Upon granting a petition for interpleader, the court shall make such order *as may be deemed just under the circumstances* relating to the payment or delivery into court, or to such person as the court shall direct, of any money or property in controversy disclaimed by the defendant." (Emphasis supplied)

The lower court's decision as to what payment it deemed just under the circumstances is subject to review by this court and if same constitutes an abuse of discretion under the facts and governing law we are constrained to reverse the same. The same is true with the order discharging Metropolitan and allowing its costs and attorney fee. Subsection (b) of the above stated Rule 2307 of the Pennsylvania Rules of Civil Procedure provides: "(b) When the defendant has complied with such order, the court shall enter an order discharging him of all liability

to the plaintiff and to any interpleaded claimant who has been served as required by these rules in respect to the money or property so paid or delivered. *If the defendant has disclaimed all interest* in the action the court in its order shall also discharge him from all liability for any costs accruing after the entry of the order and shall allow him the costs incurred by him in the action, to be paid from such money or property in the first instance and taxed as costs in the action."

Metropolitan argues that its discharge from liability should be affirmed regardless of what evidence the Johnsons might have been able to adduce in support of their claim of impartiality or collusion and cites Rule 2307 (b) of the Pennsylvania Rules of Civil Procedure which sets forth the provision for such an order of discharge without any stated requirements of impartiality and lack of collusion. Metropolitan also argues that the only requirements for an order granting it costs and allowing it attorney fees is that it shall have disclaimed all interest in the action, and that it met this requirement.

The allowance of attorneys' fees to the stakeholder is authorized by the Act of May 21, 1943, P. L. 471, 12 P.S. §583, which provides: "Whenever hereafter any person, partnership or corporation having in possession money which is claimed by two or more persons or corporations, shall come into any court of record in this Commonwealth, either at law or in equity, and disclaim all interest in the funds, procure an interpleader between the rival claimants to determine the true ownership of the funds, and pay the said funds into court, or as the court may direct, the court shall allow to the stakeholder out of the funds paid into court, its costs and *such reasonable counsel fee as the court may determine to be proper,* to be taxed as costs of the proceeding."

Where, however, it is shown that the interpleader has ceased to be a disinterested party or a mere stakeholder faced with conflicting claims, or has not acted in good faith in the matter, or has sought to protect its own interests in the matter, such interpleader cannot be allowed costs and counsel fees under the above Act: *Nell v. McCrea*, 16 Pa. D. & C. 2d 555, 9 Cumb. 12; *Shain v. DiDio*, 15 Pa. D. & C. 2d 173, 20 Monroe L.R. 101, 74 Montg. 255; In re *Bunn Estate*, 12 Bucks 671, affirmed 413 Pa. 467, 198 A. 2d 518.

When Metropolitan permitted Johnsons to secure court approval of the settlement and to have the docket marked settled and discontinued and a certificate to that effect forwarded to it, without divulging to Johnsons that claimant, their client, had communicated directly with Metropolitan's counsel that she would not honor any assignment made by her, Metropolitan at that point, if not before, became a partial participant in the controversy. By its silence, it knowingly and intentionally set in motion a chain of events which no impartial viewer of the facts would have tolerated or permitted. Metropolitan's lack of impartiality in the matter is clearly demonstrated by the fact that it regarded communications to it by Johnsons' client as privileged communications, and refused to divulge any information with regard thereto even after the Johnsons had learned that there had been some negotiation behind the scenes and had requested information concerning them.

Metropolitan seeks to justify its actions on the ground that it was effectuating company policy by attempting to get into the hands of the beneficiary under a family policy as much of the proceeds thereof as possible, while at the same time arguing it had no interest in the fund. However, regardless of the motives that prompted the Company into so actively participating in behalf of claimant, its actions in this

case constituted unjustifiable interference with the client-attorney relationship that existed between claimant and the Johnsons. Its failure to notify the Johnsons about claimant's communication was an act of bad faith on the part of Metropolitan which cannot be absolved by indications of intent to benefit the beneficiary or to effectuate some company policy of securing to the beneficiary as much of the insurance proceeds as possible. Metropolitan, through its counsel, improperly communicated behind the scenes with claimant and an attorney other than Johnsons, the retained counsel. This was contrary to the Canons of Professional Ethics of the American Bar Association, more particularly Canon 9 which provides: "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel . . ."

It is clear from the record that rather than conciliate the dispute between claimant and her lawyers, Metropolitan acted in an unusual and partisan fashion, working to effectuate a payment to claimant that would by-pass the Johnsons in their rightful role of attorneys for claimant. We do not condone such action. We must, therefore, hold that the hearing judge erred in discharging Metropolitan from further liability and in holding that Metropolitan was entitled to an attorney's fee and court costs.

We turn now to the question of the propriety of the Johnson fee and the reduction thereof by the court below. The hearing judge obviously refused to believe the testimony of claimant relating to the Johnsons' treatment of her as a client, which described treatment if believed, would fall below the professional standards required of members of the bar. Her credibility, however, was a matter for the hearing judge,

and the record reveals no abuse of discretion in his conclusion that "We feel that the (Johnsons) have acted for the best interest of their client, they have done good work, and certainly deserve the compensation to a good steward, so to speak." This determination is substantiated by the report and testimony of Attorney William Jacob, Vice-Chairman of the Committee on Offenses of the Court of Common Pleas of Allegheny County, who had investigated the matter after complaint by claimant.

The hearing judge determined that the Johnsons were not guilty of the misconduct testified to by claimant, that they had done good work in her behalf, and that the contingent fee contract had been knowingly signed by her and was not invalid for any reason. Having made this determination, he could not thereafter proceed to reduce the agreed-to fee on the basis of the "dire need" of Mrs. Edwards and the minor children. The Court stated: "And while we feel that there may be some question, or at least (Edwards) questions the power of attorney awarding this compensation on a 60-40 basis, as I understand it, we feel in fairness— not because of lack of work or not because of inconsistencies or irregularities of the (Johnsons), as complained of by (Edwards), but on the basis of the overall coverage in this case, the overall return; and on the basis of the plaintiff's complaint of this dire need of funds and because of the minors involved—we feel that the claim of 60-40 should be reduced."

It is our opinion that the court was powerless to so rewrite the agreement between the parties once it upheld the validity thereof. As stated by the Supreme Court in *DiPompeo v. Preston*, 385 Pa. 512: "The defendants here are seeking to take Equity into a realm where it has no right or duty to enter. While Equity stands ready to rescue the lambs from the wolves, it has no obligation to guide persons who are sui juris

in the conduct of their own affairs or to save them from the results of their own imprudence, if there be imprudence. Equity cannot contract for the parties. *It is only where circumstances come to light which so shock the concept of fairness and justice that it would be unconscionable to enforce the bargain that Equity intervenes."*

As a last addition, it must be noted that Judge FIOK had already entered judgment against claimant and in favor of the Johnsons when claimant failed to file Answer to the allegations of the new matter of Johnsons' Complaint that she was liable to them for the forty (40%) per cent fee under the contingent fee agreement and the assignment. Such judgment would preclude her further litigating the issue of her liability therefor to the Johnsons. In *Breckline v. Metropolitan Life Insurance Co.*, 406 Pa. 573, the Supreme Court held that the lower court had improperly entered judgment on the pleadings against the widow-claimant for the reason that: "The widow-claimant's answer effectively denied the execution and existence of the designation in favor of the plaintiff, and demanded proof thereof. In view of this, the court below erred in entering judgment on the pleadings. Such a denial requires proof before the execution of the instrument, which is vital to plaintiff's case, may be deemed to exist . . ."

It would follow from the above that when no answer was filed to Johnsons' New Matter by claimant, a judgment on the pleadings can be entered against her, with all the full force and effect of any other judgment on the pleadings.

We accordingly find that the court below erred in its orders granting an award to claimant and awarding costs and fees to Metropolitan and discharging it from all liability and from future costs. We find that the record in this case, for the reasons hereinbefore

set forth, requires a reversal of those orders and a grant to the Johnsons of the full amount of the interpleaded fund, to-wit, $8,036.77 with interest from April 6, 1967, the date the Johnsons marked the case settled and discontinued and delivered to Metropolitan a certificate of Satisfaction, Settlement, and Discontinuance.

We see no reason for remanding the matter for further hearing in this already unreasonably protracted matter, the rights of the parties clearly appearing of record. This Court, under the Act of June 24, 1895, P. L. 212, §8, par. 8 (17 P.S. §192), has the authority and power to reverse and modify any order, judgment or decree as it may think to be just. We remand the case solely for the purpose of having the Prothonotary enter the judgment as herein modified on the appropriate dockets.

Orders of December 3, 1968 and December 5, 1968 are hereby reversed, costs to be borne by appellee.

Appeal from the Order of Judge McKenna of June 2, 1967 is hereby quashed.

Upon compliance with the judgment herein modified, the Metropolitan Life Insurance Company shall be entitled to have entered in its favor an order of discharge.

---

Concurring Opinion by Spaulding, J.:

Although concurring in the result, I do not fully agree with the reasoning of the majority in two phases of this litigation.

First, since the appeal from judgment in *Edwards v. Metropolitan Life Ins. Co.*, 212 Pa. Superior Ct. 751, 242 A. 2d 281 (1968), was a final determination of the propriety of Judge Fiok's order granting interpleader, it is not now necessary to determine whether that order was interlocutory or final and appealable. In *Fisher v. Stevens Coal Co.*, 136 Pa. Superior Ct. 394, 7 A. 2d 573 (1939), an order granting equitable

interpleader was held final and appealable where the entry of the order affected the substantive right of the interpleaded parties to recover against the petitioner. As indicated in *Winnet v. Brenner*, 409 Pa. 150, 185 A. 2d 318 (1962), *Fisher* is an exception to the general rule that orders granting interpleader are interlocutory.

*Fisher* is not applicable in the instant case. The dispute between the parties is limited to which of them are entitled to the interpleaded fund; unlike *Fisher*, there is no suggestion that Metropolitan may have an aggregate liability to both parties beyond the interpleaded amount.

Secondly, as against Edwards, I conclude that Johnson, Johnson & Johnson is entitled to the entire interpleader fund solely upon the principle of res adjudicata. In *Edwards v. Metropolitan Life Ins. Co., supra,* Edwards asserted that orders directing entry of judgment in favor of Johnson, Johnson & Johnson and denying Edwards' petition to open, vacate, or modify the judgment were in error due to the impropriety of the Johnsons' professional conduct. As this Court upheld the propriety of the contingent fee agreement in Edwards, the court below erred in again reviewing *it.*

In relying upon *DiPompeo v. Preston*, 385 Pa. 512, 123 A. 2d 671 (1956), the majority suggests that contingent fee agreements must be enforced to the same extent as other contracts. I cannot agree. Unlike other contracts, contingent fee agreements are subject to the inherent powers of the courts to supervise the administration of justice and may be reduced whenever found, under the particular facts of individual cases, to be unreasonable. A.B.A., Canons of Professional Ethics, Canon 13; *Thompson Estate,* 426 Pa. 270, 232 A. 2d 625 (1967) ; *Richette v. Pennsylvania R.R.,* 410 Pa. 6, 187 A. 2d 910 (1963) ; *Topton National Bank*

*v. Holland,* 190 Pa. Superior Ct. 501, 154 A. 2d 252 (1959). Consequently, I do not concur in the implication that contingent fee agreements are fully enforceable unless governed by the equitable doctrine of unconscionability. The Johnsons' right to the entire fee in this case has been fully considered previously and finally determined, and it is unnecessary to consider again whether it should be reduced.