Farms Appeal.

Argued March 24, 1970. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Miriam L. Gafni,* with her *Paula S. Gold,* Chief, Family Division, and *Vincent J. Ziccardi,* Acting Public Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 12, 1970:

Appellant was adjudicated delinquent and committed to Camp Hill for shooting a young girl during a juvenile gang fight in North Philadelphia.

Several hearings were held in this matter.

At the first hearing, the girl who was shot testified. She said she was on the street when two "warring" gangs confronted each other. She was shot in the leg but could not identify her assailant.

At the second hearing, Richard Hines, a juvenile present during the gang fight, testified. He said he was not involved in the fight but was just "talking to a girl" on the street. He said he saw the shooting and that appellant had shot the girl. Furthermore, he identified appellant at the police station afterward.

Appellant called his mother. According to her testimony, before the time of the shooting, her son said he was going to the playground. She did not see him again until after the time of the shooting, when he came home. Then, a policeman came, one Officer Frances, to pick her son up. She went with appellant in the officer's car to the scene of the shooting. There, Hines stood outside the car and when confronted with appellant, asked "who is that in the car."

Two alibi witnesses were also called by appellant. One was an employee of the Department of Recreation. He said appellant came to the playground at the time in question and played there for an extended period of time. A second witness, a juvenile, said that

appellant was at the playground at the time in question while the witness was playing basketball.

In rebuttal to the testimony of appellant's mother, the Commonwealth called Officer Frances who testified that Hines had not been unsure of appellant's identification when he first saw him in the officer's car. He "definitely knew who it was when he saw him in the car."

At the third hearing, Hines was recalled by appellant for additional cross-examination. It was elicited that he talked to Officer Frances at the scene and that he had given Officer Frances appellant's name as the assailant. He also talked to the officer at the police station. He said that everything he said during the interview at the police station was the truth.

Appellant's counsel then called Officer Frances for additional cross-examination. The officer was asked whether he had spoken to Hines at the police station, and if so, what Hines had said. This was objected to by the district attorney. Appellant's counsel then explained the reason for his question as follows: "If your Honor please, it is hearsay evidence if we are looking for the truth of the matter . . . . [But] I am looking at it as far as cross examination is concerned for the purpose of testing the credibility of the witness [Hines], not to see what he said is the truth but to determine whether he had been truthful today, your Honor." The court sustained the district attorney's objection.

Appellant's counsel then asked Officer Frances whether Hines had given him any statement, and if so, what it was. This was objected to by the district attorney as "beyond the scope of direct." "The commonwealth," he said, "only called [Officer Frances] as a rebuttal witness on the actual hearing." The court said that Officer Frances' testimony "was limited to the rebuttal of the [appellant's mother, i.e., the] testi-

mony as to what happened at the scene when the car ... drove up [with appellant and his mother inside]." Accordingly, the court sustained the objection.

Appellant's counsel then moved to call Officer Frances as his own witness, which the court permitted, over the district attorney's objection. During counsel's questioning, the following appears of record.

"[By appellant's counsel] : Q. Now, Officer [Frances], did you have occasion to speak to Richard [Hines] after the incident? A. I did. . . . Q. Did you have a formal interview with him? A. I did. . . . Q. And was that in the police station? A. Yes, that was in the police station. Q. Could you tell his Honor what Richard had said at that time? [The district attorney] : Objection. [Appellant's counsel] : As to the occurrence? [The district attorney] : Objection. That is hearsay evidence. [Appellant's counsel] : . . . If your Honor Please, this is a clear exception to the hearsay rule. If we are questioning this officer as to the truth, as to what Richard [Hines] had said, I would not ask these. Now, I am calling this officer for the sole purpose of rebuttal to Richard [Hines'] evidence. . . . THE COURT: Objection overruled. . . . [The district attorney] : If your Honor please, I must strenuously ask that your Honor permit me to further argue this. THE COURT: Go ahead. [The district attorney] : This is not an attempt by counsel to learn the truth or any of this mishmash that he has been arguing to you. He has been making an attempt to get into what he is not permitted to do, to see the police record. He wants to see the police record. [Appellant's counsel] : I have no desire to see it, your Honor. [The district attorney] : Or to probe this officer with what he has. He can't examine this officer's testimony to the credibility of another witness, your Honor. THE COURT: He is not cross-examining him. . . . THE COURT: Objection overruled. . . . [Appellant's counsel] : Now, Officer

[Frances], would you tell us what the conversation was between you and Richard [Hines]? . . . [The district attorney]: If the Court please, before this happens [i.e., Officer Frances' testimony], I am going to ask for a recess, before this question goes any further. THE COURT: What is the reason for the recess? [The district attorney]: I have a reason for a recess, your Honor. THE COURT: What is that? [The district attorney]: I have to have recess, your Honor. THE COURT: All right. [The district attorney]: It is imperative. . . . THE COURT: I will grant a fifteen minute recess. . . . [The district attorney]: I will tell the court where I am going. I am going to the Supreme Court to get a Writ of Prohibition to stop further proceedings. THE COURT: Go ahead."

Following the recess, the district attorney renewed his objection. The court indicated that there had been argument off the record and that now he was convinced that the objection should be sustained.

The question thus presented is: Is it error to preclude a juvenile's inquiry into statements made by a principal witness to the police, when such statements may be contradictory of that witness' testimony?

It has always been understood that a party to a proceeding has a right to impeach a witness for the other party by presenting prior inconsistent statements of the witness. *Commonwealth v. Rothman*, 168 Pa. Superior Ct. 163, 77 A. 2d 731 (1951). "We have never before heard of such right being denied a party to an action, either civil or criminal, nor that there was a discretion in the court to allow or disallow any such cross-examination. It is only where the cross-examination relates to contradiction on a collateral issue that there is a discretion in the trial judge. Probably because the matter is so well understood, there are few cases to be found in the books [on the issue]." *Id.* at 166, 77 A. 2d at 733. See *DeJohn v. Orell*, 429 Pa.

359, 240 A. 2d 472 (1968). Cf. *Commonwealth v. Petrillo*, 341 Pa. 209, 19 A. 2d 288 (1941).

According to Wigmore, the general aim of presenting prior inconsistent statements is "to show the witness to be in general *capable of making errors* in his testimony . . . for upon perceiving that the witness has made an erroneous statement upon one point, we are ready to infer that he is capable of making an error upon other points." 3 WIGMORE, EVIDENCE §1017, p. 684 (3d ed. 1940) [original emphasis.]. Such statements may also be used to show "a moral disposition to lie, . . . a partisan bias, . . . a faulty observation, . . . a defective recollection, or any other quality." *Id.* at 685. Any or all of these aims are legitimate ones for a party to pursue. Because prior inconsistent statements, if argued properly are used for such purposes and not assertively, they are not hearsay and should not be excluded as such.[1] [2]

---

[1] Wigmore, in fact, criticizes the general rule that does not permit such statements in for their assertive content. Since "the witness [being impeached] is present and subject to cross-examination [t]here is ample opportunity to test him as to the basis for his former statement." 3 WIGMORE, EVIDENCE §1018, p. 688 (3d ed. 1940).

[2] It should be noted moreover that hearsay in nonjury cases has not, in practice, been subject to the restrictive technical rulings that are more common in jury cases. Judges sitting as the trier of fact usually admit hearsay "for what it's worth" without ruling on its admissibility. Professor Davis has suggested that the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States re-examine its proposed Federal Rules of Evidence to consider whether "(1) a rule that apparently useful hearsay may be admitted in a nonjury case even if it would be inadmissible in a jury case and (2) a rule that a finding in a nonjury case may be based on the kind of evidence on which responsible persons are accustomed to rely in serious affairs even if the evidence would be excluded as hearsay in a jury case." Davis, *Hearsay in Nonjury Cases*, 83 HARV. L. REV. 1362, 1368 (1970).

We do not, however, permit admission of such statements if they are concerned with collateral matters. The test for collateralness was that enunciated by Chief Baron Pollock in *Attorney-General v. Hitchcock,* 1 Exch. 91, 154 Eng. Rep. 38 (Exch. 1847) and adopted by the Supreme Court in *Commonwealth v. Petrillo,* supra at 224, 19 A. 2d at 295. Baron Pollock said: "[M]y view . . . has always been, that the test, whether the matter is collateral or not, is this: if the answer of a witness is a matter which you would be allowed on your part to prove in evidence if it have such a connection with the issue, that you would be allowed to give it in evidence then it is a matter on which you may contradict him." *Attorney-General v. Hitchcock,* supra at 99, 154 Eng. Rep. at 42.

In the instant case, appellant sought to elicit from the officer a prior inconsistent statement of the sole identifying witness, without whose testimony appellant would not have been adjudicated. The prior statement might have cast doubt on his identification of appellant. The introduction of a contradictory statement would show, among other things, that the witness was capable of error with respect to his identification testimony. This would not be collateral. It might also be used to show a partisan bias, an important aspect of gang cases, where the possibility always exists that the witness' testimony is motivated by gang bias. Finally, the statement might show a moral disposition to lie, always a possibility in such cases and particularly important since identification is at issue.[3]

---

[3] Despite the district attorney's heated objection that appellant's counsel was "making an attempt to get into what he is not permitted to do [sic], to see the police record," the court could have relied upon the rule that "defense counsel is entitled to access to prior statements by Commonwealth witnesses to investigative officers [subject to the court's supervision]." *Commonwealth v. Swierczewski,* 215 Pa. Superior Ct. 130, 134, 257 A. 2d 336, 338

Were this an adult proceeding, clear error would have been committed by excluding the prior statement. A *fortiori* it was error to do so in a juvenile proceeding.

Juvenile proceedings have, from their inception, been more relaxed than trials of adults. Many, sometimes too many, of the procedural rights accorded adults were denied to juveniles. *Gault* decided that, before a juvenile could be stigmatized a delinquent and deprived of his liberty, due process at least required notice of charges, counsel, the right to confront and cross-examine accusing witnesses, and the privilege against self-incrimination. *In re Gault,* 387 U.S. 1, 87 S. Ct. 1428 (1967). *Winship* decided that, when a juvenile is charged with a violation of criminal law and could be similarly stigmatized and incarcerated as a result of a finding of violation, then the finding must be upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068 (1970).

But the rationale of *Gault* and *Winship* was that only certain essentials of due process were required. The Court was clear, however, that due process did not require abandonment of "the informality, flexibility, [and] speed" of the juvenile procedure if the juvenile's interest in a fair adjudication was not overcome thereby. *In re Winship,* supra at 366, 90 S. Ct. at 1074.[4]

---

(1969) (SPAULDING, J.). See *Commonwealth v. Smith,* 417 Pa. 321, 208 A. 2d 219 (1965) ; *Commonwealth v. Kubacki,* 208 Pa. Superior Ct. 523, 224 A. 2d 80 (1966) (MONTGOMERY, J.).

[4] "The Supreme Court's opinion [in *Gault*] should not be viewed by the Courts and Judges of this Commonwealth as a mandate to abandon the juvenile court adjudicative procedure. Rather, it is an invitation to formulate a court procedure which will combine the best aspects of juvenile and criminal court procedure into an amalgam which will offer the juvenile the best of both worlds. The Supreme Court, in our view, recognized that there are essential differences between the trial of adults and juveniles. Similarly, juvenile court judges must recognize these differences and

In nonjury cases, strict adherence to the technicalities of the rules of hearsay does not necessarily lead to the most just finding. "The jury-trial system of rules of Evidence is *not* the only safe system of investigation in matters of liberty and property . . . . Nor is it correct to assume that the general wisdom of experience which is represented in the system at large is represented in all the detailed rules rigidly enforced . . . . What is commonly forgotten is that most of the rules . . . are merely rules of caution, *i.e.,* they are based upon a *possibility* of error; so that the failure to observe the rule is perfectly consistent with a high probability of truth." 1 WIGMORE, EVIDENCE §4(b), pp. 35-36 (3d ed. 1940). "The main direction of the federal case law is toward the view that in nonjury trials a finding may be based on 'the kind of evidence on which responsible persons are accustomed to rely in serious affairs,' whether or not the evidence is technically inadmissible as hearsay." Davis, *op. cit.,* note 2 supra at 1368, quoting in part from *NLRB v. Remington Rand,* 94 F. 2d 862, 873 (2d Cir.), *cert. denied,* 304 U.S. 576, 58 S. Ct. 1046 (1938).

In juvenile cases, where the judge sits alone as the trier of fact and where it is his duty to become as knowledgeable and inquisitive as reasonably possible, it is better for him to admit hearsay "for what it's worth." He can make the determination whether responsible people would rely upon it in serious affairs when he makes his findings. He, by his experience in dealing with thousands of juveniles, being exposed to their statements, both forthright and delusive, will not

exercise their discretionary powers, if the aims or purposes of the juvenile court are to be achieved." *Commonwealth v. Johnson,* 211 Pa. Superior Ct. 62, 74-75, 234 A. 2d 9, 16 (1967). See also *Terry Appeal,* 438 Pa. 339, 265 A. 2d 350 (1970) [juveniles not entitled to jury trials].

be swayed, as a jury would, by hearsay which is not to be relied upon.

Of course, we would not allow an adjudication of delinquency based on hearsay. Such a result would be in violation of a juvenile's right of confrontation. *In re Gault,* supra at 56-57, 87 S. Ct. at 1459. But, when a matter as important as the prior statement of a witness is brought to the court's attention, it should be permitted to consider it, whether or not it technically is an exception to the hearsay rule.

As appellant's counsel in this Court so aptly put it: "If the statement of Richard Hines was in fact substantially identical with his testimony, what had the Commonwealth to fear from the disclosure of his statement? In fact, testimony that the statement was consistent would have served only to bolster the Commonwealth case." It was the kind of statement that, once brought to the court's attention by counsel, would be helpful to the court in deciding what the true history of the incident was.

In summary, the prior inconsistent statement was clearly admissible in the trial of an adult. In juvenile proceedings, where we should not quarrel over the technical niceties of the hearsay rule, a *fortiori* it should have been admitted. To do otherwise, was error and denied appellant a fair adjudicatory proceeding.

The order of commitment is reversed and the record is remitted for a new adjudicatory hearing.[5]

---

[5] We do not consider, therefore, the other serious question presented by this case: whether it was error to permit the Commonwealth to show the crime was committed at a time different than that stated in the petition, where alibi was the defense. See *Commonwealth v. Boyer,* 216 Pa. Superior Ct. 286, 264 A. 2d 173 (1970).