418 A.2d 1346

**COMMONWEALTH of Pennsylvania**

v.

**Richard WOODS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 27, 1978.

Filed Jan. 11, 1980.

A. Benjamin Johnson, Jr., Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, President Judge:

Appellant Richard Woods, and his two co–defendants, were convicted of two counts of rape, robbery, burglary, conspiracy, and carrying a firearm on a public street, at a jury trial in the Court of Common Pleas of Philadelphia County. Post–trial motions were denied and appellant was sentenced to serve a prison term of not less than 15 to not more than 40 years. We affirm the decision of the lower court.

One night in January, 1975, three black males entered the home of Mrs. Delores Calbert and her fourteen year old daughter, Lisa. The men raped both women and robbed the family at gun point. Both Mrs. Calbert and Lisa testified that appellant was one of the three men who participated in these crimes. Appellant's motion to suppress identification testimony was granted as to a pre–arrest photographic show–up, but denied as to all other pre–arrest and subsequent identification evidence. The jury found appellant guilty on all counts.

On appeal, appellant raises eight issues for our review. Although not all of these issues were specifically presented in written post–trial motions, all eight issues were briefed and considered by the lower court. Since the law in effect at the time of this appeal allowed us to consider these issues due to the fact that it was prior to *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), we address the merits of each issue presented.

## I.

First appellant argues that the lower court should have granted him a discharge for the failure of the Com-

monwealth to bring him to trial within 180 days after the filing of the complaint pursuant to Pa.R.Crim.P. 1100(a)(2).[1] Although appellant's argument seems to have merit at first glance,[2] the fatal flaw in the argument is that appellant never filed a petition to dismiss pursuant to Rule 1100(f)[3] in order to preserve the claim for our review. As our court stated in *Commonwealth v. Davis*, 261 Pa.Super. 204, 208, 395 A.2d 1388, 1389 (1978):

> "To establish a rule 1100 claim, the defendant is obliged to have the lower court rule on its merits prior to trial. Thus he must either file a motion under Rule 1100(f) or contest the Commonwealth's petition to extend, so that by one method or the other the facts and issues come before the court. Otherwise, his Rule 1100 claim will be waived. See *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978); *Commonwealth v. Wallace*, 475 Pa. 27, 379 A.2d 558 (1977)."

In this case, the Commonwealth filed a Petition to Extend pursuant to Pa.R.Crim.P. 1100(c)[4], but withdrew it the next

1. Pa.R.Crim.P. 1100(a)(2) reads:
   "Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

2. We note that the trial did not commence on July 14, 1975 when the suppression motions were heard since the allegation that the motions were specifically reserved for the time of trial is not supported by the record. See *Commonwealth v. Jackson*, 262 Pa.Super. 151, 396 A.2d 690 (1978); *Commonwealth v. Bethel*, 261 Pa.Super. 231, 396 A.2d 372 (1978).

3. Pa.R.Crim.P. 1100(f) reads:
   "At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant."

4. Pa.R.Crim.P. 1100(c) reads:

day since it felt appellant had unconditionally waived his Rule 1100 rights.[5]  Therefore, appellant did not have a full opportunity to contest the Commonwealth's petition.  However, appellant still should have petitioned for dismissal under Rule 1100(f) and his failure to do so did not give the lower court the opportunity to decide the issue prior to trial. The issue is waived. *Commonwealth v. Davis,* supra.

## II.

Second, appellant argues that the lower court erred by not granting his motion to suppress the in–court identifications made by Delores Calbert and her daughter, Lisa.  Appellant contends that there was no origin, independent of a photographic show–up which was suppressed, to support the in–court identification.

At the hearing on the motion to suppress, Mrs. Calbert testified as follows concerning her view of appellant:

"Q.  You said it was Mr. Woods.  How do you know it was Woods?

A.  It was the third one on the end.  Bernard Miller and James Miller was with me, so it had to be Woods [who was with Lisa.]

Q.  Now, I'm asking you now, did you have an opportunity at the time when he was in the hallway to see his face?

"At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. A copy of such application shall be served upon the defendant through his attorney, if any, and the defendant shall also have the right to be heard thereon.  Such application shall be granted only if trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth.  Any order granting such application shall specify the date or period within which trial shall be commenced."

5.  Appellant's waiver of his Rule 1100 rights on July 23, 1975, was not an unconditional one but was only for a period of 61 days.  See *Commonwealth v. Robinson,* 269 Pa.Super. 398, 410 A.2d 316 (1979).

A. I seen him go into the room and I see him hand Bernard Miller the gun. He had a gun and James Miller had a gun.

Q. When did you see him hand the gun to Bernard?

A. Pardon me.

Q. When did you see him give the gun—

A. As he entered my daughter's room with my daughter.

Q. Was he facing you?

A. Yes, yes, he was. He turned around to face me while I turned around to see what was going on."

She further testified that at the time she saw appellant take her daughter into her room, he was standing in the hall directly under an overhead light, which gave her a better view of appellant.

As to events that took place later, Mrs. Calbert testified that:

"A. I seen Donald Woods as he came out of my daughter's room fastening up his pants. That's the best look I got at him."

■ Upon review of this testimony, we agree with the trial court judge that Mrs. Calbert had a source independent of the suggestive pre–trial photographic display upon which she could have based her in–court identification. She testified that she saw appellant, at least twice, in the hallway of her home under a ceiling light, which was lit, and there is no indication that her identification would have been unreliable. See *Manson v. Braithewaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Our cases have held that a view of an assailant for a period as short as 10 seconds "would seem like an eternity" in various situations, which certainly could have been the case when Mrs. Calbert viewed appellant taking her daughter into her room and then later exiting that same room after the crime. See *Commonwealth v. Rose*, 265 Pa.Super. 159, 172, 401 A.2d 1148, 1155 (1979).

Additionally, the suppression hearing judge found that:

"2. Lisa and Delores Calbert came face to face with their assailants who, at gun point, ordered them upstairs and into separate bedrooms   .   .   .

7. The ground floor of the residence [of the victims] was well lighted, as was the hallway, Mrs. Calbert's bedroom and the basement."

Given these findings of fact coupled with Mrs. Calbert's testimony, we conclude that she had an independent source upon which to base her in–court identification. Therefore, there was no error. *Commonwealth v. Hall*, 456 Pa. 243, 317 A.2d 891 (1974); *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974).

Appellant also argues that Lisa's in–court identification of appellant should have been excluded on the basis that Lisa was not paying attention to the men and, therefore, could not have identified them accurately. However, the entire context of the testimony demonstrates the following. Lisa was downstairs in her home reading a library book when the three men came to the door. She was the one to open the door and let the men in at which time she saw them. Even though she resumed her reading, her attention was again drawn to the men when one put a gun to her mother and ordered her upstairs. Appellant then did the same to Lisa, all of which occurred in a well–lighted area as established by Mrs. Calbert's testimony and the finding of fact of the suppression judge. It was only after appellant was upstairs, Lisa testified, that she did not see his face clearly, and she described appellant to the police as being tall, dark–skinned with a short bush. The suppression judge went on to question Lisa as to whether she fully understood the term to "recognize" someone's face, since Lisa's testimony seemed strained. Based on the totality of the circumstances, we conclude there was not a substantial possibility for misidentification by Lisa based on her opportunities to view appellant. Therefore, there was no error in admitting the in–court identification, since it arose out of a source independent of the photographic show up. *Manson v. Braithewaite*, supra.

 

### III.

■ Next appellant argues that a mistrial should have been granted when the Commonwealth introduced a letter of co–defendant, James Miller, addressed to appellant, as Richard Walters. The facts surrounding this letter are that James Miller testified on direct examination that he did not know appellant, Richard Woods, by an alias. The Commonwealth, in an effort to impeach Mr. Miller's credibility, introduced the letter showing that Miller had, in fact, known appellant by the alias of Richard Walters since he had addressed the letter to him under that name. Miller then recanted and admitted he knew appellant by that alias. Appellant argues that the jury could have then inferred that Miller had something to hide concerning appellant.

■ This contention is without merit. As the trial judge stated in his opinion, "[b]y the very nature of impeachment, a witness will suffer in the eyes of the jury." The function of impeachment evidence is to attack the credibility of a witness, and the Commonwealth had a right to accomplish this through the use of prior inconsistent statements. *In re Farms*, 216 Pa.Super. 445, 268 A.2d 170 (1970). As we stated in *In re Farms*, 216 Pa.Super. at 450, 268 A.2d at 173:

> "The general aim of presenting prior inconsistent statements is 'to show the witness to be in general *capable of making errors* in his testimony . . . for upon perceiving that the witness has made an erroneous statement upon one point, we are ready to infer that he is capable of making an error upon other points.' 3 Wigmore, Evidence § 1017, p. 684 (3d ed. 1940) [original emphasis.] Such statements may also be used to show 'a moral disposition to lie . . . a partisan bias . . . a faulty observation . . . a defective recollection, or any other quality.' Id. at 685. Any or all of these aims are legitimate ones for a party to pursue."

The introduction of the letter in the instant case was in accordance with these principles and was not error.

## IV.

Fourth, appellant argues that a mistrial should have been granted when the Commonwealth introduced into evidence his prior conviction to impeach appellant's credibility. The conviction introduced occurred in 1973 for burglary and conspiracy, and involved one of the co–defendants who was tried with appellant in the instant case.

The general rule is that:

"[t]he Commonwealth may not introduce evidence that the accused has committed crimes other than the one with which he is charged. *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972); *Commonwealth v. Bruno,* 215 Pa.Super. 390, [407], 258 A.2d 666 (1972); *Commonwealth v. Trowery,* 211 Pa.Super. 171, 235 A.2d 171 (1967). There are two commonly recognized exceptions to the general rule. Subject to the trial judge's discretion, evidence of other crimes which is relevant to an issue in the case may be admitted if its probative value outweighs its prejudicial impact. See *Commonwealth v. Ulatoski,* supra; *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); McCormick, Evidence § 185 (Cleary 2d ed. 1972). Secondly, if the accused takes the stand in his own defense, his veracity may be attacked by introduction of evidence of crimes involving dishonesty or false statement subject to certain restrictions. See *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). See also Act of March 15, 1911, P.L. 20, § 1; 19 P.S. § 711." *Commonwealth v. Grimm,* 249 Pa.Super. 441, 446, 378 A.2d 377, 379 (1977).

Cases within this Commonwealth have specifically held that the crime of burglary is one that involves dishonesty and, therefore, can be used for impeachment purposes. *Commonwealth v. Kahley,* 467 Pa. 272, 356 A.2d 745 (1976); *Commonwealth v. Amos,* 445 Pa. 297, 284 A.2d 748 (1971). The conviction of burglary entered into evidence in the instant case fits squarely within the second exception to the general exclusionary rule. Appellant took the stand in his

own defense and, therefore, invited having his credibility attacked by such a conviction. Our Supreme Court has spoken to this point in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973) where it listed the factors to be considered when making a decision on the admissibility of a prior conviction. They include:

"the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." Id., 452 Pa. at 567, 307 A.2d at 263.

■ Since the prior offenses were relatively recent and clearly involved dishonesty, and because there were no other circumstances militating against their admission into evidence, we conclude the trial court did not abuse its discretion in determining their relevance outweighed their prejudice. Additionally, the court charged the jury on the limited use of the prior convictions in their deliberations and thereby dispelled any prejudicial impact. See *Commonwealth v. Jackson*, 230 Pa.Super. 386, 326 A.2d 623 (1974).

### V.

■ Appellant contends that error was committed when Lisa Calbert, the Commonwealth's witness, mentioned during her testimony that she had seen photographs of appellant which had been suppressed. This argument is pressed solely on the ground that the jury might infer appellant had a prior criminal record. *Commonwealth v. Turner*, 454 Pa. 439, 442, 311 A.2d 899, 900 (1973); *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). In light of the fact that appellant's credibility was impeached by the use of his prior convictions for burglary and conspiracy, this argument is specious.

### VI.

■ Sixth, appellant argues that it was error for the trial judge to allow the Commonwealth to introduce evi-

dence concerning the alleged "flight" of appellant and his co–defendants. This agreement fails for two reasons. First, the attorney who objected to the testimony and moved to strike was counsel for co–defendant, James Miller. Counsel for the other co–defendant, Bernard Miller, joined in the objection and motion. Counsel for appellant never joined in these objections and therefore waived the argument. Second, even if defense counsel did not waive the argument, his point is still meritless since the trial judge granted the motion to strike and informed the jury that the evidence had no probative value and, therefore, should not be considered in their deliberations.

## VII.

Appellant strongly contends that a new trial must be granted on the basis of the district attorney's closing argument to the jury. The prosecutor said:

"I would submit to you, ladies and gentlemen, that what James Miller should hear on the charge of unlawfully carrying a firearm without a license, is guilty. On the charge of criminal conspiracy, what he should hear is guilty. On the charge of burglary, what he should hear is guilty. On the charge of rape, what he should hear is guilty. On the charge of rape of Lisa Calbert, he should hear guilty. On the charge of robbery, he should hear guilty. Mr. Woods likewise. Bernard Miller likewise." N.T. 802–803.

Appellant argues this was a statement of the prosecutor's personal opinion as to the guilt of the accused and is therefore reversible error. *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971).

A prosecutor "holds an office of unusual responsibility, and he [or she] must exercise his [or her] duties with complete impartiality." *Commonwealth v. Toth*, 455 Pa. 154, 158, 314 A.2d 275, 277 (1974). A prosecutor is permitted to draw reasonable inferences to the jury's attention as long as the implications are firmly rooted in the evidence presented and not in personal opinion. Therefore, not every im-

proper remark by a district attorney is reversible error. The remarks must prejudice the jury so as to form a fixed bias and hostility in the minds of the jurors against the defendant so that they could not weigh the evidence and render a true verdict. *Commonwealth v. Green*, 251 Pa.Super. 318, 380 A.2d 798 (1977).

■ The remarks made by the district attorney in the instant case merely reflect the position of every district attorney who presents a case. As we said in *Commonwealth v. Tolassi*, 258 Pa.Super. 194, 209, 392 A.2d 750, 758 (1978), "Were we to include phrases like 'I submit' and 'I suggest' among those forms of argument deemed improper, we would virtually destroy the Commonwealth's recognized right to argue fair inferences arising from the evidence to the jury." The closing argument in the instant case carefully reviewed the evidence presented by each of the Commonwealth's witnesses, and then concluded in the terms of "I submit," that based on that evidence the verdict which could reasonably be inferred from those facts was one of guilty. The prosecutor's statements did not rise to the level of impropriety wherein the cases have held reversible error was committed. *See, e. g., Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977); *Commonwealth v. Maloney*, 469 Pa. 342, 365 A.2d 1237 (1976); *Commonwealth v. Toth*, supra; *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). Therefore, there was no error in the trial judge's denial of defense counsel's motion for mistrial.

## VIII.

Finally, appellant objects to comments on the evidence the trial judge made concerning how long Mrs. Calbert and Lisa had viewed appellant and his co–defendant in their home. The judge commented as follows:

"Now, a witness comes on the witness stand, good jurors, they are asked, 'How long did it take for that to happen?' Some witnesses said it took two seconds.

Now, you could believe it happened, but you don't have to believe that it only took two seconds. You use your

experience. The witness may come on and be asked, 'How long did that take to happen?' The witness says, 'It took a couple of minutes.' You might say it doesn't take a couple of minutes to happen." N.T. 840–841.

After the charge was complete, defense counsel generally objected to the trial judge's reference to the jurors' use of their own experience in weighing the evidence. By way of clarification, the trial judge gave a curative instruction stating that the jury could only decide the guilt or innocence of the accused on the evidence presented. Their personal experience was only to be used in determining the credibility of the witnesses. The trial judge stated, "I'm trying to make it very clear to you that your experience in life is not itself the source of any innocence or guilty."

■■■ We conclude that the judge's comments did not result in an erroneous instruction. In fact, it has been held that no error was committed in a charge to the jury that "they could in arriving at a correct verdict, consult their general knowledge and their own experience in life. . ." 23A C.J.S. Criminal Law § 1296, p. 721 (1961). As our Supreme Court stated in *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959) in reference to the judge's comments on an alibi defense:

"It will be the duty of the trial judge to carefully instruct the jury as to the relationship of the evidence of the prosecution and the evidence of the defendant as each bears upon the essential elements of the crime charged. This must be done without unfair disparagement although the trial judge must be left free to comment upon the evidence . . . so long as he leaves the jury free to find its own true verdict." *Id.*, 396 Pa. at 231–232, 151 A.2d at 446.

The judge's comments in the instant case fell within this duty and did not unduly color the defense's case in the mind of the jurors. Additionally, if any error had been committed by the judge's comments it would be rendered harmless beyond a reasonable doubt due to the curative instruction

given by the lower court. Cf. *Commonwealth v. Russell*, 459 Pa. 1, 326 A.2d 303 (1974).

Judgment of sentence affirmed.

PRICE and SPAETH, JJ., concur in the result.

JACOBS, former President Judge, did not participate in the decision or consideration of this case.